J-A33006-14

2015 PA Super 102

| W.C.F. | | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|---|
| | Appellant | |
| | v. | |
| M.G. | | |
| | Appellee | No. 2128 EDA 2014 |

Appeal from the Order Entered June 17, 2014
In the Court of Common Pleas of Philadelphia County
Family Court at No(s): OC1300107

BEFORE:  LAZARUS, J., WECHT, J., and STRASSBURGER, J.[*]

OPINION BY LAZARUS, J.:                          **FILED APRIL 29, 2015**

W.C.F.  ("Father") appeals from the order entered in the Court of Common Pleas of Philadelphia County granting M.G. ("Mother") primary custody of the parties' two-year old daughter ("Child"), granting the parties shared legal custody, and granting Father partial custody (six days every two weeks).  After our review, we vacate and remand. Despite multiple findings that point to an award of primary custody to Father, the trial court awarded Mother primary physical custody and Father partial custody.  After our review of the parties' briefs, the record, and the lower court opinions, we conclude that the court's determination that Mother be awarded primary physical custody is unreasonable in light of its own factual findings which are

_____

[*] Retired Senior Judge assigned to the Superior Court.

amply supported in the record. *See S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa. Super. 2104) (this Court may reject trial court's conclusions in child custody matter only if they involve error of law or are unreasonable in light of factual findings).

Mother and Father were married in 2010. Their only child was born in 2012. Father is Assistant Director of Technology at the Mastery Charter High School in Germantown. Mother is a Senior Manager of Technical Accounting at Comcast.

Father is a US citizen; he was raised in Florida. Mother is a native of Malaysia and moved to the United States after meeting Father. Mother became a naturalized citizen in October 2012, two weeks before Child was born. Mother's parents (Maternal Grandmother and Maternal Grandfather) relocated to the United States in July 2012, before Child was born, and moved into Mother and Father's two-bedroom apartment in Old City Philadelphia.

Since Child's birth, Maternal Grandmother has been the primary caretaker for the parties' child. As a result of Father's belief that Mother's family, in particular Maternal Grandmother, was blocking his attempts to bond with Child, the parties agreed that Maternal Grandparents would move out of the parties' apartment and obtain their own residence. As it turned out, however, Mother and Child left along with Maternal Grandparents on January 23, 2013.

The next day, Father filed a complaint for shared legal and physical custody of Child. Mother filed for divorce and sought to confirm her legal and primary physical custody in that complaint. Since separation, Mother has resided with her sister and her parents on the 700 block of South Street in Philadelphia. Mother's brother resides there on occasion as well. Father resides in an apartment in Ardmore, where a separate bedroom is set up for Child.

On February 8, 2012, the court entered an interim order preserving the "status quo." Notably, Mother created that status when she took Child out of the marital home and moved in with her parents. The interim order provided Mother with primary physical custody and Father with partial physical custody every Monday, Wednesday and Friday from 6:30 p.m. until 8:30 p.m., and on Sunday from 11:00 a.m. to 6:00 p.m. The court scheduled a protracted hearing, which included psychological evaluations, and the court heard testimony on August 9, 2013 and on February 5, 2014.[1]

On August 23, 2013, Father filed an amended complaint for custody, seeking sole legal and primary physical custody of Child with supervised visitation or partial custody to Mother. Following the custody hearing, the

_____

[1] The trial court stated: "Testimony was taken on August 9, 2013, then on February 5, 2014 and February 19, 2014." Summary Opinion, at 2. No notes of testimony were included in the record on appeal. *See* Pa.R.A.P. 1911(d). This Court ultimately obtained the notes of testimony from August 9, 2013 and February 5, 2014.

J-A33006-14

trial court, on June 17, 2014, entered the current custody order and filed a Summary Opinion dated June 18, 2014. The order grants Mother primary physical custody and grants Father partial physical custody on a repeating two-week basis, as follows:

- Saturday 10:00 a.m. until Sunday 7:00 p.m.

- Tuesday 5:00 p.m. to 8:00 p.m.

- Thursday 5:00 p.m. to Friday 7:00 p.m.

- Tuesday 5:00 p.m. until Wednesday 8:00 p.m.

- Thursday 5:00 p.m. until 8:00 p.m.

Father filed a timely notice of appeal and a concise statement of matters complained of on appeal on July 16, 2014. The trial court filed a Pa.R.A.P. 1925(a) opinion on August 20, 2014. Father raises the following issues for our review:

1. Did the trial court err in awarding primary [physical] custody to Mother despite its determination that it was in the child's best interests to award primary custody to Father?

2. Did the trial court err in expressly relying on Mother's primary physical custodian status, the interim custody status quo created by order without prejudice, in making its determination, especially where evidence showed that Mother surreptitiously vacated the marital residence with the child when she was only 3 months old and that Maternal Grandmother, in fact, was the primary caregiver?

3. Did the trial court err in concluding that keeping the child in the daily care of Maternal Grandmother was "less disruptive" given the Court's own findings and evidence to the contrary?

Appellant's Brief, at 7.

- 4 -

We begin with our scope and standard of review: We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. *M.P. v. M.P.*, 54 A.3d 950, 953 (Pa. Super. 2012). Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. *Id*. We defer to the trial judge regarding credibility and the weight of the evidence. *Id*. The trial judge's deductions or inferences from its factual findings, however, do not bind this Court. *Id*. We may reject the trial court's conclusions, but only if they involve an error of law or are unreasonable in light of its factual findings. *Id*. *See also J.R.M. v. J.E.A.*, 33 A.3d 647 (Pa. Super. 2011); *Hanson v. Hanson*, 878 A.2d 127, 129 (Pa. Super. 2005); *Landis v. Landis*, 869 A.2d 1003, 1011 (Pa. Super. 2005).

When a trial court orders a form of custody, the best interest of the child is paramount. *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011). To determine the child's best interest, the trial court must consider the following factors when "ordering any form of custody." 23 Pa.C.S. § 5328(a). Those factors are:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).

Moreover, on issues of credibility and weight of the evidence, we defer to the findings of the trial court, which has had the opportunity to observe the proceedings and demeanor of the witnesses. *R.M.G.*, *Jr. v. F.M.G.*, 986 A.2d 1234, 1237 (Pa. Super. 2009). The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion. *Id.* The test is whether the evidence of record supports the trial court's conclusions. *Ketterer v. Seifert*, 902 A.2d 533, 539 (Pa. Super. 2006).

At the custody hearing, the court heard testimony from Mother and Father, as well as Paternal Grandmother. Robert L. Tanenbaum, Ph.D., submitted a court-ordered custody evaluation report; this report was entered into evidence without Dr. Tanenbaum's testimony, by agreement of the parties. Doctor Tanenbaum concluded:

> Information gathered about [Child's] physical and psychological health during the course of this evaluation, are **not** consistent with the ongoing allegations made by her Mother about Father's negative parenting behaviors. According to [Child's] pediatrician, this child remains in good health and appears to be developing normally. According to Dr. Price, who has very recently worked behaviorally with these parents and their child (including maternal grandmother), there have been no abnormal behaviors exhibited by this child in that office setting.
>
> * * * *
>
> The results of the present custody evaluation are most consistent with a phased-in expansion of Father's custodial time with his daughter. There is insufficient support in the data

- 7 -

obtained for requiring supervised visitation of the minor child when she is with either of her parents at the present time. These parents now have the benefit of co-parent counseling, which began very recently with Dr. Dana Goode. It is hoped that this venue will provide an opportunity for these parents to further improve their relationship with one another as [Child's] parents.

Psychological Custody Evaluation, 5/13/14, at 20 (emphasis in original). Additionally, Dr. Tanenbaum noted in his evaluation the December 19, 2013 findings of Child's pediatrician, Dr. Sammaritano:

- There are no findings that child has been abused.

- This child is growing normally.

- These parents distrust each other.

- The maternal grandmother may be interfering with parenting.

*Id*. at 17.

Following the hearing and review of the custody evaluation report, the trial court considered the mandatory statutory factors pursuant to 23 Pa.C.S. § 5328. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa. Super. 2013) (holding that while Custody Act requires trial court to articulate reasons for its decision prior to filing of notice of appeal, there is no required amount of detail; "all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations"). After considering the statutory factors, the court made the following findings:

A. Mother's continued allegations of "injuries" Child sustained while in Father's care were, according to the court, "cause for serious concern." Trial Court Summary Opinion, 6/14/14, at 7. The court noted that no objective observer has corroborated Mother's allegations about injuries or possible abuse-- "not the child's

pediatrician, Dr. Donna Sammaritano [who saw the child 8 times between November 2, 2013 and December 19, 2013];" "not the Emergency Room medical staff who examined the child on October 13, 2013; not the CARE Clinic (Child Abuse, Referral and Evaluation) physician, Dr. Joanne Wood, M.D., which clinic specialized in medical evaluations of child for possible sexual or physical abuse or neglect, and not the custody evaluator, Robert L. Tanenbaum, Ph.D., who was retained by the parties to do a psychological custody evaluation and, *inter alia*, observed the interaction between both parties and the child." *Id*. at 7-8. Therefore, Mother is not likely to encourage or permit frequent and continuing contact between Father and Child. *Id*. at 11. *See* 23 Pa.C.S.. § 5328(a)(1).

B. Mother's concerns about possible sexual abuse are either insincere or delusional. *See* Summary Opinion, at 10. *See* 23 Pa.C.S. §5328(a)(2).

C. Mother presents herself as savior and protector of Child, however, this "excludes openness to all the other sources of health and wellbeing available to the child from other persons, Father most particularly." *See* Summary Opinion, at 13.

D. "By way of contrast, Father presented as a normal, concerned parent[.]" *Id*. Father's testimony was credible. *Id*. at 14.

E. While both parties perform parental duties, 23 Pa.C.S.A. § 5328(a)(3), the evidence is not that clear as to the specifics of Mother's parental care since Maternal Grandmother was the primary caregiver even when Mother was home. *See* Summary Opinion, at 12. "Father demonstrates a more natural approach to parenting and it is likely Child has a wholesome response to same." *Id*. The court found Mother's "rigid" parenting and preoccupation with detail "obscures a wholesome, rational approach to child-rearing." *Id*. at 14. *See* 23 Pa.C.S. § 5328(a)(3).

F. Mother's continual allegations of abuse, including her taking pictures of Child's genitalia and presenting such at trial, while at the same time not raising these concerns at well visits and the lack of corroboration from medical personnel, resulted in the court's finding that there was "no credible evidence in the record at all with regard to any abuse toward the child by either party." *Id*. at 11 (citing Notes of Testimony, 1/16/14, at 26). *See* 23 Pa.C.S.A. § 5328(a)(2). Of note is the fact, that Mother found it necessary to

take a picture of Child's vaginal "redness" and present it to the court one year later, "but delayed going to the hospital or any other medical provider for an entire month, by which time the condition had "resolved" and she did not even bring the photo to the examiner. Summary Opinion, at 8-11. Mother's other remarks that the child "cries upon hearing Father's voicemail when Mother plays it on speaker phone," and becomes "restless and clingy the entire night" are "simply not credible." Summary Opinion, at 11.

G. With respect to stability and continuity in Child's life, expanding Father's custody time with Child will not disrupt Child's schedule. "It is in the child's best interests to expand Father's time with her now, rather than later." *Id*. 14. *See* 23 Pa.C.S. § 5328(a)(4).

H. With respect to availability of extended family, Father has no extended family in the area; Mother, on the other hand, lives with her parents, her sister and her brother. However, "in this case, their constant presence around the child [,particularly Grandmother,] can be problematic." Grandmother's "actions and words have been a detriment to a strengthening bond between Father and child." Summary Opinion, at 14. *See* 23 Pa.C.S. § 5328(a)(5).

I. With respect to attempts of a parent to turn child against the other, the court found that "accusations against Father made by Mother and her family members" was "a very real concern," and that it "will only become more overt as the child ages and becomes more susceptible to influences." Summary Opinion, at 15. *See* 23 Pa.C.S. § 5328(a)(8).

J. Both parties are available to make child care arrangements. *See* 23 Pa.C.S. § 5328(a)(12). As noted above, Child is with Maternal Grandmother when Mother works. The court stated that it was satisfied Father would be able to find appropriate child care and that it "will be beneficial" for the child's development for Child to be "in contact with other children on a regular basis and to be among adults other than Mother's family members[.]" Summary Opinion, at 16.

K. With respect to the level of conflict and cooperation, the court found "a good bit of conflict" between the parties, that "a commitment on the part of both parents" is required, and that "Mother in particular, must adjust to working with Father to achieve the best for their child." *Id*.

L. With respect to the mental and physical condition of a party or member of a party's household, the court noted its concerns "with Mother's psychological mindset with regard to parenting[.]" *Id*. at 17. This included Mother's continued accusations against Father "despite the absence of any objective findings to corroborate" the accusations. *Id*. Nonetheless, the court made no adverse psychological findings against Mother.

The court's order expanded Father's time with Child, as compared to the interim order of 13 hours per week. However, as previously noted, the interim order *simply maintained the status quo*, which was set by Mother when she left Father, taking Child with her and maternal grandparents. The fact that Father's time with Child has increased relative to that interim order is not a useful gauge, and it is not necessarily fair or reasonable in these circumstances. More significantly, it is not clear to this Court that the award is in Child's best interests. In its explanation as to why primary custody was awarded to Mother despite its findings, the trial court stated:

> "[W]hen considering the mandatory factors, the *findings of fact favor Father more than Mother*. However, since Father *has not been the primary custodian to date*, and his *complaint for custody did not request primary custody*,[2] a change in primary custody would be disruptive for the child, particularly because it would mean placement in *child care rather than with a family member* during the week.

Summary Opinion, at 17 (emphasis added). In its Pa.R.A.P. 1925(a) Opinion, filed after Father's appeal, the trial court again acknowledges that it concluded after review of the statutory factors that the findings favored

---

[2] A review of the record indicates that the trial court was mistaken and father did ask for custody on August 23, 2013 in his Amended Complaint.

Father more than Mother, and the court explained its justifications once more. **See** Pa.R.A.P. 1925(a) Opinion, 8/20/14, at 2-7. We do not find any of these three justifications valid.

Initially, we point out that the fact that Father has not been primary custodian to date is, first, a function of Mother's unilateral unreasonable decisions, and second, not a basis for denying him primary custody where all factors point otherwise. Further, the "primary caretaker doctrine" was intended to be an additional consideration that would tip the scales in favor of the primary caretaker in a situation where the trial court deemed both parents to be fit to act as a primary custodian. **Commonwealth ex rel. Jordan v. Jordan**, 448 A.2d 1113 (Pa. Super. 1982). Such is not the case here. The court's findings do not point to the conclusion that both Mother and Father are equally fit to act as primary custodian. The court expressed its concerns about Mother's allegations of abuse by Father, as well as her "rigid" parenting style, which obscured a "wholesome, rational approached to child-rearing." Summary Opinion, at 14. The court contrasted Mother's parenting style with Father's, characterizing Father's as "more natural." **Id**. at 12. Furthermore, under the Child Custody Act, 23 Pa.C.S. § 5321 *et seq.*, "the court shall determine the best interest of the child by considering all relevant factors, *giving weighted consideration to those factors which affect the safety of the child*[.]" **See** 23 Pa.C.S. § 5328(a)(emphasis added). In **M.J.M.**, this Court stated:

- 12 -

The language of this statute is clear. It explicitly provides that all relevant factors shall be considered by the trial court, and the only factors that should be given "weighted consideration" are factors that "affect the safety of the child[.]" ***Id***. "When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." 1 Pa.C.S.A. § 1921(b); ***see also Ario v. Ingram Micro*, *Inc***., 600 Pa. 305, 317, 965 A.2d 1194, 1201 (2009). If the Pennsylvania Legislature intended [ ] extra consideration be given to one parent because of his or her role as the primary caretaker, it would have included language to that effect. Stated another way, ***the absence of such language indicates that our Legislature has rejected the notion that in analyzing both parents, additional consideration should be given to one because he or she has been the primary caretaker***.

63 A.3d at 338 (emphasis added).

Changes in custody schedules will invariably disrupt a child's routine. The parties, however, can minimize disruption by committing to a spirit of cooperation.[3] Significantly, trial court found that giving Father greater periods of custody, even during working hours where Child would be in child care, would benefit Child's social development. The trial court noted that it was approximately a fifteen-minute drive from Father's home in Ardmore to

---

[3] This Court has serious concerns about Mother's repeated, unfounded allegations of Father's abuse of Child, raising questions of Mother's motivations. Other, more subtle behaviors, on both Mother's and Maternal Grandmother's part, whether intended or not, have the effect of alienation as well. Father testified that when he tried to feed or change Child, he was met with resistance and ridicule by Maternal Grandmother. N.T. Hearing, 2/5/14, at 136-39. Father even testified as to Mother's reluctance to hand over Child to Father at the police station, where exchanges took place. ***Id***. at 205. None of this was lost on the trial court, as indicated by its findings and its admonishment to the parties and attorneys at the August 9, 2013 hearing. ***See*** N.T. Hearing, 8/9/13, at 29.

Mother's in Philadelphia. *See* N.T. Hearing, 8/9/13, at 6. The Court was also aware that both Mother and Father hold full time professional positions. *See* Custody Evaluation, *supra* at 7.

From this we conclude that, geographically and financially, the parties are in a position to at least share custody equally, if not give father primary physical custody. A graduated schedule making progress toward this end would be in Child's best interests. We emphasize that Child is young enough to benefit from improvement in the family dynamic; however, due to the lack of cooperation cited by the trial court, awarding primary physical custody to father might be of significant benefit to Child at this time, and might make mother realize that her lack of cooperation and attempts at alienation will not be rewarded by this Court. .

Second, Father *did* file an amended complaint for primary physical custody on August 23, 2013. In its Pa.R.A.P. 1925(a) opinion the trial court acknowledged its error in stating otherwise, which further underscores the unreasonableness of the trial court's conclusion. *See* 1925(a) Opinion, 8/20/14, at 2.

And finally, the trial court was satisfied that Father would obtain appropriate child care, noted that Maternal Grandmother provided child care when Mother was at work, and concluded that it "*will be beneficial for the child to be in contact with other children on a regular basis and to be among adults other than Mother's family members*[.]" *Id.* at 16 (emphasis added).

The trial court acknowledged this would aid in "the child's development." *Id.*

Thus, in determining Child's best interests, the court's consideration of the statutory factors weighed heavily in favor of granting Father primary custody. *J.R.M. v. J.E.A.*, 33 A.3d 647, 650 (Pa. Super. 2011) (when trial court orders form of custody, best interest of child is paramount). Where a court makes findings consistently in favor of custody in one party, and then awards custody to the other party, it must provide valid reasoning to support that decision. Especially with respect to Mother's allegations of abuse, which the court specifically found not credible, we cannot, in good conscience, sanction this unexplained about-face. Although the court's findings are supported in the record, its conclusions are unreasonable in light of these findings. *See S.W.D. v. S.A.R.*, 96 A.3d 396 (Pa. Super. 2014). Because the majority of the statutory best interest factors favor Father, we conclude that the court's order was not based on a reasoned consideration of those factors. Parental alienation was a critical issue here. The court noted that Father was more likely to promote Child's relationship with Mother than Mother would with Father, in fact stating, "Mother is not likely to encourage or permit frequent and continuing contact between Father and Child." Summary Opinion, at 11. *See* 23 Pa.C.S. § 5328(a)(1). Not only was parental alienation an issue, but the repeated attempts of Mother to allege abuse that were found not credible by the court, the influence of maternal grandmother, the refusal of Mother to cooperate with Father, all would

- 15 -

outweigh retaining primary custody with Mother absent a compelling rationale evidenced by the trial court. While prudence dictates that this Court exercise its authority sparingly in a child custody case, we are not powerless to rectify a manifestly unreasonable custody order. ***V.B. v. J.E.B.***, 55 A.3d 1193 (Pa. Super. 2012).

After careful review and reflection, we conclude that the court's order awarding Mother primary physical custody is unreasonable in light of its factual findings. ***M.P.***, ***supra***. We, therefore, vacate and remand for an order consistent with the trial court's findings and this Court's decision.

Vacated and remanded. Jurisdiction relinquished.

Judge Wecht joins this Opinion.

Judge Strassburger files a Dissenting Opinion.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/29/2015