J-S95031-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| A.D.H. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| M.H., | : | |
| | : | |
| Appellant | : | No. 2458 EDA 2016 |

Appeal from the Order entered July 11, 2016
in the Court of Common Pleas of Bucks County,
Civil Division, No(s): A06-15-60073-C

BEFORE:  STABILE, MOULTON and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:            **FILED MARCH 09, 2017**

M.H. ("Father") appeals from the Custody Order finding A.D.H. ("Mother") in contempt of the trial court's prior interim custody Order (the "Interim Custody Order"), and awarding Mother primary physical custody of the parties' four children ("Children"),[1] and Father having partial physical custody in accordance with a schedule.  We vacate and remand.

In its Opinion, the trial court set forth the factual and procedural history underlying the instant appeal, which we adopt as though fully restated herein.  **See** Trial Court Opinion, 9/14/16, at 1-7.

On appeal, Father presents the following claims for our review:

I.  Is it proper for a trial court to grant primary physical custody to one parent after finding the custody factors either to favor the other parent or weigh equally between both parents? Specifically, is it proper for a trial court to grant primary physical custody to the parent whom it found (i) alienated [Children]

---

[1] Mother and Father have twelve-year-old twin boys and ten-year-old twin girls.

from the other parent, (ii) "poisoned" the relationship between the other parent and [Children,] and (ii) "clearly" was in contempt of the Custody Order?

II. Is it proper for a trial court to grant primary physical custody to one parent and award less physical custody time to the other parent than (i) either parent requested[,] and (ii) the custodial evaluator recommended, after finding that all of the custody factors either favor the other parent or weigh equally between both parents[,] and that the primary physical custodian parent "clearly" was in contempt of the [prior, Interim] Custody Order?

Brief for Appellant at 6. We will address Father's claims together, as they are related.

Father first claims that the trial court improperly awarded primary physical custody of Children to Mother, after finding that most of the 23 Pa.C.S.A. § 5328(a) factors weighed in Father's favor, and the remaining factors favored neither party. Brief for Appellant at 30. Father compares the instant case to the circumstances presented in *W.C.F. v. M.G.*, 115 A.3d 323 (Pa. Super. 2015). In *W.C.F.*, Father argues, this Court reversed a trial court's order awarding the mother primary physical custody, concluding that the award was unreasonable in light of the court's factual findings. Brief for Appellant at 31. Father contends that this Court's decision in *W.C.F.* mandates the "identical result here, given the similarities between the facts of the two cases." *Id.*

In his second claim, Father argues that the trial court improperly awarded him less custodial time than what was (a) awarded in the Interim Custody Order, (b) recommended in the Court Conciliation & Evaluation

- 2 -

Service ("CCES") Report, and (c) requested by Mother. *Id.* at 39. According to Father, the trial court failed to render any findings that would justify a reduction in Father's custodial time. *Id.*

In reviewing a trial court's custody order,

> our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses firsthand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*J.M. v. M.L.G.*, 63 A.3d 331, 334 (Pa. Super. 2013) (citation omitted).

> [O]n issues of credibility and weight of the evidence, we defer to the findings of the trial court, which has had the opportunity to observe the proceedings and demeanor of the witnesses. The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion. The test is whether the evidence of record supports the trial court's conclusions.

*W.C.F.*, 115 A.3d at 327.

To determine the child's best interest, the trial court must consider the factors set forth in Section § 5328(a):

> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

- 3 -

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is

not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

In **W.C.F.**, the case upon which Father relies, this Court found that the trial court had abused its discretion in granting mother primary custody, where the trial court's consideration of the statutory factors weighed heavily in favor of father. **W.C.F.**, 115 A.3d at 331. This Court concluded that the trial court had improperly given weighted consideration to mother's status as primary caregiver, when the legislature did not include giving weighted consideration to this factor in Section 5328(a). **Id.** at 331. Ultimately, this Court concluded that the trial court had abused its discretion in denying Father primary custody, "where all factors point otherwise." **Id.** at 330.

In this case, at the close of testimony, the trial court reviewed each of the factors required by Section 5328(a), finding that all but one of the factors weighed in favor of each parent equally, or in favor of Father:

(1) "Mother is not prepared emotionally, mentally, or psychologically to encourage continuing contact. In fact, she wants no contact …. Father is more likely to encourage that contact." N.T., 7/11/16, at 204. The trial court found that Mother continued to withhold Children for visitation "in clear contravention of the Court Order." **Id.** at 194. The trial court

- 5 -

further pointed out Mother's efforts to frustrate visitation, by sending one, two, three or none of Children. *Id.* at 193.

(2), (2.1) "There is no abuse committed by a party." *Id.* at 205.

(3) Both parents are "equally capable" of performing parental duties. *Id.* at 205-06.

(4), (5), (6) Father and Mother both have the support of extended family members. *Id.* at 206.

(7) The trial court noted Children's preference not to see Father, but found that the preference is "not well-reasoned. That well has been poisoned by [M]other." *Id.* at 206.

(8) The trial court discussed Mother's attempts to alienate Children from Father. *Id.* at 176. Mother calls Father "a weirdo or something similar in front of the [C]hildren." *Id.* at 194. Mother has told Children that Father wants to send her to jail. *Id.* at 199. The trial court stated, "It is clear to me that all four [C]hildren, especially [their daughter, A.], are enmeshed and aligned with Mother to the point where they see Father as the intruding enemy. Mother's cause is their cause." *Id.* at 202.

(9), (10) The trial court found that Father wishes to co-parent, but Mother "won't allow it." *Id.* at 207. "Both parents can attend to the daily physical needs and emotional needs of [C]hildren." *Id.*

(11) The trial court found that Mother and Father's residences are geographically close to each other. *Id.* at 205-06.

(12) The court found that the parties have made, and will continue to make, appropriate child care arrangements. *Id.* at 206-07.

(13) The case is high-conflict, but there is no evidence that Father's behavior in any way placed Children at risk. *Id.* at 207. The trial court set forth examples of Mother's unwillingness to cooperate with Father, including that Mother refused to give Father one child's soccer equipment, causing the child to miss practice. *Id.* at 183. Mother refused to allow Father to take Children to see the Harlem Globetrotters, and to a family member's first communion. *Id.* at 183, 186. In March 2015,

"Father did not see the [C]hildren. For approximately three weeks[,] he was denied time with them …." *Id.* at 185. Over a period of five months, Mother denied Father visitation 27 times. *Id.* at 193. Other times, Mother sends "one, or two, or three, or sometimes none of the [C]hildren. So you're separating siblings, you're empowering them …." *Id.*

(14) There is no history of drug or alcohol abuse.

(15) The trial court acknowledged Father's infidelity and pornography fixation, but found that neither impacted custody. *Id.* at 178, 180, 204, 208.

(16) The trial court noted the recommendation, made in the CCES Report, that Mother should continue to have primary custody, as she was primary provider of care, custody and control over Children from the time of their birth. *Id.* at 200.

Upon review, we conclude that the trial court's Custody Order is unreasonable in light of the above statutory findings.[2] *See W.C.F.*, 115 A.3d at 332 (recognizing that, "[w]hile prudence dictates that this Court exercise its authority sparingly in child custody cases, we may rectify a manifestly unreasonable custody order.").

Here, as in *W.C.F.*, the trial court weighed almost all of the statutory

---

[2] In its Opinion, the trial court stated that it "made it clear at the July 11th, 2016 hearing that awarding Father a lengthy period of additional custody would cause even more turmoil in the [C]hildren's lives, and would not be in their best interests." Trial Court Opinion, 9/14/16, at 8 (citing N.T., 7/11/16, at 41). However, our review discloses no mention of the trial court's statement on page 41 of the Notes of Testimony.

best interest factors in favor of Father, or in favor of both parties equally. The trial court's resulting Custody Order (awarding Father only partial custody on alternating weekends) was manifestly unreasonable, in light of the court's own assessment of the statutory factors.[3] We conclude that under these circumstances, the trial court abused its discretion in awarding Father only partial physical custody, on alternating weekends. The trial court's own findings would support an award of increased, if not shared physical custody of Children. Accordingly, we vacate the trial court's Custody Order, and remand for an order consistent with the trial court's own findings.

Order vacated. Case remanded for entry of a custody order in accordance with this Memorandum. Superior Court jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 3/9/2017

---

[3] As in **W.C.F.**, parental alienation was a critical issue between the parties, and the trial court found that Mother was unlikely to promote Children's relationship with Father.

**IN THE COURT OF COMMON PLEAS**
**BUCKS COUNTY, PENNSYLVANIA**
**FAMILY DIVISION**



Case #: 2015-60073 C B09   11317885

Code: 5076      Judge:36
Patricia L. Bachtle, Bucks County Prothonotary
Rcpt: Z1606790  9/14/2016 1:13:27 PM

A███████. H███████████        :
                              :
    v.                        :       **No. A06-15-60073-C**
                              :
                              :       **CUSTODY**
M██████ H████████             :
                              :       **CHILDREN'S FAST TRACK**
                              :       **APPEAL**


## OPINION

M█████,H█████,("Father") appeals from this court's Order of July 11, 2016, finding A████████. H█████, █████("Mother") in willful contempt of our previous Custody Order.  At the hearing of July 11, 2016, we also ordered shared custody of the parties' four (4) children.  The physical custody schedule which we entered awarded Mother primary physical custody, with Father having partial custody on the second and fourth weekends of every month from Friday at 5:00 p.m. until Sunday at 12:00 noon.

As a part of our final Order, we denied Mother's Motion to appoint a Guardian Ad Litem for the children.

This appeal has been designated as a "Children's Fast Track Appeal."  Therefore, this Court is required pursuant to Pa. R.A.P. 1925(a)(2)(ii) to file an Opinion specifying the reasons for our Order within thirty (30) days of receipt of the Notice of Appeal and the Concise Statement of Errors Complained of on Appeal.

The complete Notes of Testimony have not yet been transcribed, however, the Notes of Testimony from the July 11, 2016 Order (41 Pages) have been transcribed and are being forwarded with this Opinion.

This Opinion is based upon our review of our contemporaneous notes from the hearings and our recollection of the testimony.

Litigation in this matter commenced on January 15, 2015 with Mother's Petition for Custody of the parties' minor children, two sets of twins: B██████ (D.O.B. 11/03/2003), C██ (D.O.B. 11/03/2003), A██████ (10/08/2006) and A██████ (D.O.B. 10/08/2006).

On June 24, 2015, an agreed Interim Order was entered in this matter by the Honorable James M. McMaster of this court, pending the outcome of a Court Conciliation Evaluation for the parties.

The Interim Order established the following:

Mother and Father were to have shared legal custody of the children. Mother was awarded primary physical custody and Father was to have partial physical custody. Following the Interim Order, Father was to have partial custody every other weekend on Friday at 6:00 p.m. until Sunday at 8:00 p.m. and Tuesday at 6:00 p.m. until Wednesday at 10:00 a.m. On alternate weeks, Father was to have partial custody form Tuesday at 6:00 p.m. until Wednesday at 10:00 a.m. and dinner visits on Monday and Thursday from 5:45 p.m. until 8:45 p.m. The establishment of a holiday schedule was deferred until after the completion of the evaluation. See Domestic Relations Court Sheet, June 24, 2015.

As part of that Interim Order, both Mother and Father agreed to use "Our Family Wizard" to coordinate future scheduling for the custody visits by the children and as a means to communicate via text message or e-mail. According to the parties, the "Our Family Wizard" app also will confirm that a message has been delivered and received by the other party.

On September 11, 2015, Father filed a Petition for Custody Contempt.

On September 24, 2015, Mother responded with an "Amended Answer to Petition for Custody Contempt and Counterclaim for Contempt."

On November 5, 2015, Father filed an Amended Petition for Custody Contempt.

2

On November 30, 2015, Mother responded with her "Answer to Amended Petition for Custody Contempt and Counterclaim."

Since then, hearings were held on January 5, 2016, May 11, 2016, and most recently on July 11, 2016.

The following facts were summarized prior to issuing our Order following a hearing on July 11, 2016:

Mother and Father's marriage came to an end upon Mother's discovery of Father's extramarital infidelity, as well as Father's viewing of "pornography" on his home computer.

J█████ S█████ testified that she worked with Father, who was her district supervisor at Best Buy in Montgomeryville, Pennsylvania. They began a "romantic and intimate" relationship. N.T. July 11, 2016, 27. After ending the relationship, Ms. S█████ stated that she was repeatedly harassed by Father, and after Ms. S█████ complained to Human Resources, Father was terminated from his employment at Best Buy. Following his termination, Father informed Ms. S█████'s manager that he and Ms. S█████ had an affair, and that Ms. S█████ had smoked marijuana six years ago.

Father also located Ms. S█████'s father using GPS technology in an effort to continue trying to contact Ms. S█████. Ms. S█████ became so fearful of Father that she purchased a gun for self-protection. N.T. July 11, 2016, 27.

Dr. Kenneth Maguire testified via telephone that Father does not need treatment for a "pornography addiction," but he did recommend that Father undergo counseling to address this issue. Dr. Maguire's testimony was based only upon Father's "self-reporting." N.T. July 11, 2016, 22.

At the hearing, Father admitted his marital infidelity and also utilized the phrase "porn addiction" in describing his condition. He also testified that none of the four (4) children were ever exposed to the pornography he viewed, as his computer was "locked" with "special restrictions."

In addition to Father's viewing of pornography, he also admitted that he sent a nude photograph to "a woman."

3

At the hearings, it was also established that one of the children outright refuses to go on scheduled visits with Father, alluding to her desire to commit suicide rather than visit with her Father. N.T. July 11, 2016, 29.

We acknowledged, however, that much of this animosity between Father and the children has been exacerbated by Mother's words and actions. N.T. July 11, 2016, 29.

Father provided twenty-seven (27) dates over a period of five (5) months when Mother withheld custody of the children. When Mother does allow Father to see the children, she will sometimes send only one or two of the children at a time. N.T. July 11, 2016, 23. Mother also urged this court to direct that Father's custody visits be supervised by Mother's family. This request was denied. N.T. July 11, 2016, 11.

Mother moved out of the marital home in February 2015 with the children to live with relatives. After moving, Mother contacted PECO, and directed that the electricity and heat be shut off at the marital home, leading to a flood in the basement when a sump pump overflowed. N.T. July 11, 2016, 12-13.

Father also testified that Mother, after learning of Father's extramarital infidelity, changed the locks on the marital home without warning.

Mother testified that she became aware of Father's fixation upon pornography and his "taking photos of his junk." Their daughter A⬛⬛⬛⬛ had stated that she would rather "kill herself" than visit Father. Their other daughter, A⬛⬛⬛⬛, had also written a "poem" referring to a girl who contemplates suicide.

On cross-examination, Mother admitted that she told the children that Father "broke a marital promise" and Father wanted to send Mother to jail.

Mother testified that the custody exchanges were tense and created anxiety in the children. On at least one instance, Father videotaped a custody exchange, which ended with Mother contacting the police. N.T. July 11, 2016, 19. On the video recording, the child A⬛⬛⬛ (A⬛) was observed sitting on the steps of Mother's apartment and refusing to accompany Father for a

4

partial custody visit on October 16, 2015. In this same video, Mother states: "I don't think she ███████ wants to go…I won't force her."

The acrimony and hostility between the parties is so intense that they could not even agree upon a psychotherapist for the children; e.g. Mother insisted upon a female therapist only.

Dr. Jill Catalanotti, a psychotherapist, also testified. Ms. Catalanotti was aware that the daughter, A███, was not attending custody visits with her Father. She also testified that all of the children complained that when in Father's custody, Father often failed to wake them up, resulting in lateness for school. They also complained that Father does not cook and only makes "peanut butter and jelly and cereal."

Dr. Catalanotti suggested that the stress and tension exhibited by the children is a product of the stressful relationship between the parties.

The Court Conciliation and Evaluation Services Report authored by Catherine Toso (November 4, 2015 – 27 pages) was entered into evidence as a court exhibit. After reviewing all of the salient issues between the parents, Ms. Toso recommended that the best interests of the four children would be served by awarding joint legal custody with Mother being the primary custodian, and Father having "parenting time" every Tuesday and Thursday for dinner visits and alternating weekends.

The evaluation by Ms. Toso also provided the following recommendations: The father should receive mental health treatment and an assessment for "addiction to pornography" and should receive services, if recommended. All four children should receive mental health services in the form of child/family counseling with both parents participating. Court Conciliation Evaluation, November 4, 2015, 26.

> When entering our Order, we reasoned as follows:
>
> Mother is not prepared emotionally, mentally, or psychologically to encourage continuing contact. In fact, she wants no contact, and that will not happen. Father is more likely to encourage that contact, and we so find.
>
> He will foster a relationship with Mother. This Court will have to force Mother to have the children in a relationship with the Father.

There is no abuse committed by a party. Has he emotionally abused [Mother]? Absolutely. It must be a tough thing (Father's extramarital affair) to wrap [Mother's] hands around, but [Father] hasn't committed any abuse to the children.

This is what it's all about. Has he ever put the children in danger? No, absolutely not. Does he have a pornography fixation? Yes, but it's not child pornography. If he's taking nude pictures of your children, bring them in. I'll make sure he doesn't see his kids. Until that happens, he will.

Prior to the breakup, it appears Father was more than capable of performing parental duties. He still is. Both parents are equally capable.

I've heard that there is extended family on both sides. We assume they each support their side of the family.

Is there a preference with the children? Absolutely. They don't want to see the father, especially Ana. It's not well-reasoned. That well has been poisoned by the mother. She can't separate her disdain for the father form anything else. The children know you feel betrayed and you have painted Father with a broad brush that he is unfit to be a dad, and that is just not true.

Both parents can attend to the daily physical needs and emotional needs of the children.

The parties blessedly live in close proximity to each other. Both parents have strong support systems with their respective families. It's clear that they have, and will continue to make, appropriate child care arrangements.

N.T. July 11, 2016, 35-37.

On July 14, 2016, Father filed his Motion for Reconsideration of our July 11, 2016 custody order.

On July 21, 2016, this court scheduled a hearing upon Father's Motion for Reconsideration for August 12, 2016.

On August 9, 2016, prior to the hearing upon the Motion for Reconsideration, Father filed this appeal.

Because of a pre-paid vacation by counsel for Mother, on August 16, 2016 we continued this Reconsideration Hearing until September 22, 2016. The parties also agreed to stay the appeal, pending the outcome of the scheduled hearing upon Father's Motion to Reconsider.

6

Nevertheless, on August 23, 2016, the Superior Court entered an Order, holding that this court no longer has jurisdiction to hold that hearing, and emphasized that:

The Rule requires reconsideration to be expressly granted. It is insufficient for the trial court to merely set a hearing date on the reconsideration motion or issue a rule to show cause. Indeed a failure to "expressly" grant reconsideration within the time set by the rules for filing an appeal will cause the trial court to lose its power to act on the application for reconsideration.

A.D.H. v. M.H., No. 2458 EDA 2016, Order dated August 23, 2016.

Father raises the following four (5) issues on appeal, *verbatim*:

1. Whether the Court erred in granting Appellee primary physical custody after the Court found the factors to consider when awarding custody to be in Appellant's favor or to be equal between the parties, finding that Appellee has alienated children from Appellant, finding that Appellee denied Appellant the ability to exercise his parental rights and holding Appellee in contempt for said behavior.
2. Whether the Court erred in granting Appellee primary physical custody and granting Appellant less time than what Appellee was asking him to receive, less time than the previous interim order by agreement and less time than the CCES evaluation recommended, after the Court found the factors to consider when awarding custody to be in Appellant's favor or to be equal between the parties, finding that Appellee has alienated the children from Appellant, finding that Appellee denied Appellant the ability to exercise his parental rights and holding Appellee in contempt for said behavior.
3. Whether the Court erred in not holding Appellee accountable for her contemptuous conduct in any way whatsoever, even though the Court found her "clearly in contempt."
4. Whether the Court erred in not addressing vacations or a holiday schedule in the Custody Order, knowing the difficulty in the parties' communication and the finding of Appellee's inability to effectively co-parent.
5. Whether the Court erred by not ordering co-parent counseling or relief from the problem identified with respect to Appellee's inability to co-parent or even communicating with Appellee.

Statement of Matters Complained of on Appeal, August 8, 2016.

It is well-established that judges are granted broad discretion in custody matters. The Superior Court of Pennsylvania has held that:

"In reviewing a custody order, our scope is of the broadest type and our standard is [an] abuse of discretion...Ultimately, the test is whether the trial court's

7

conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court."

*M.O. v. J.T.R.,* 85 A.3d, 1058, 1061 (Pa. Super. 2014) (*citing* V.B. v. J.E.B., 55 A.3d 1193, 1197 (Pa. Super. 2012)).

Father's contention that the custody Order was unreasonable because we found the enumerated factors "to be in Appellant's favor or to be equal between the parties" is unsupported by the record. Deciding a proper custody arrangement involves more than a raw tallying of factors, as Father would seem to suggest. It is clear that "it is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.,* 63 A.3d 331, 339 (Pa. Super. 2013) (*appeal denied* 68 A.3d 909).

Father is correct in asserting that Mother was in contempt of our prior Order. We even acknowledged that Father was deserving of "make-up time" because of Mother's contemptuous behavior, however, we made it clear at the July 11th, 2016 hearing that awarding Father a lengthy period of additional custody would cause even more turmoil in the children's lives, and would not be in their best interests. N.T., 7/11/2016, 41.

Father also argues that the trial court erred in failing to delineate a specific holiday and vacation schedule, given the high conflict between the parties. This is not an accurate recitation of our Custody Order. In our Order, we awarded Father custody for all periods he is available from 9:00 a.m. until 6:00 p.m. on all national holidays (Mondays) when the children are not in school. We did, however, leave the parties open to establishing their own holiday schedule for any other relevant and important holidays.

Father's final contention is that the trial court erred in not ordering the parties to attend co-parent counseling sessions. This argument is without merit. Pennsylvania law is clear that "the court *may*, as part of a custody order, require the parties to attend counseling sessions." 23 Pa.C.S.A § 5333(a) (emphasis added). Appellant fails to provide any authority that requires a court to order counseling session in a custody case. The plain language of the statute unmistakably places the imposition of counseling sessions within the discretion of the trial court in granting its Order.

8

We welcomed Reconsideration in this case, and with hindsight, this Court could have ordered make-up time or a greater partial custody schedule to Father, and we could have considered the imposition of counsel fees against Mother. We intended to have Father's counsel address these issues at the hearing upon the Motion for Reconsideration.

One reason we scheduled a hearing on Father's Motion for Reconsideration is, perhaps through the prism of hindsight, we should have drafted an Order which provided Father with make-up time occasioned by Mother's arbitrary withholding of custody. As noted, we were also open to considering the imposition of counsel fees against Mother because of Mother's contempt.

This is a high-conflict case where Mother is clearly in contempt. Mother's withholding of custody and refusal to comply with the prior Custody Order is unconscionable. Nevertheless, we urge that our July 11, 2016 order be affirmed.

BY THE COURT:

DATE: 9/13/16

ALAN M. RUBENSTEIN, J.

9