J-S15044-26

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| RAFAELA LAPENTA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| JONATHAN FAGAN | : | No. 151 EDA 2026 |

Appeal from the Order Entered December 12, 2025
In the Court of Common Pleas of Delaware County Civil Division at
No(s): CV-2025-081642

BEFORE: OLSON, J., MURRAY, J., and STEVENS, P.J.E.[*]

MEMORANDUM BY STEVENS, P.J.E.: **FILED JUNE 23, 2026**

Rafaela LaPenta (Plaintiff/Appellant) appeals, *pro se*, from the order denying the petition she filed against Jonathan Fagan (Defendant/Appellee) pursuant to the Petition from Abuse ("PFA") Act, 23 Pa.C.S. §§ 6101-6122. We affirm.

On October 8, 2025, Appellant Rafaela LaPenta filed a PFA petition against Appellee Jonathan Fagan, her ex-boyfriend and father of her children, and the trial court granted a temporary PFA order against Fagan on the same date. N.T., 12/11/25, at 6; Pa.R.A.P. 1925(a) Opinion, 1/28/26, at 1. A final PFA hearing was held on December 11, 2025, and at its conclusion the trial court entered an order denying LaPenta's PFA application. This appeal follows.

_____

[*] Former Justice specially assigned to the Superior Court.

In response to the trial court's order directing LaPenta to file a concise statement of matters complained of on appeal pursuant to Pa.R.A.P. 1925(b), she has filed a prolix, five-page concise statement[1] from which we discern an overarching issue charging the trial court with an abuse of discretion while conducting its review pursuant to Section 6102(a)(5) of the PFA Act. In her *pro se* Brief of Appellant, she breaks down her Section 6102(a)(5)-based challenge as follows:

1. Whether the trial court committed an error of law by misapplying 23 Pa.C.S. § 6102(a)(5) of the Protection From Abuse Act by requiring proof of imminent bodily harm rather than determining whether Appellee engaged in a course of conduct placing Appellant in reasonable fear of bodily injury.

2. Whether the trial court committed an error of law by improperly requiring physical proximity or contact between the parties in order to establish abuse under the Protection From Abuse Act, contrary to the statutory definition of abuse set forth in 23 Pa.C.S. § 6102(a).

3. Whether the trial court abused its discretion by excluding relevant evidence of prior abusive conduct, including video evidence documenting Appellee's conduct toward Appellant, thereby preventing a full and fair assessment of whether Appellee engaged in a course of conduct placing Appellant in reasonable fear of bodily injury pursuant to 23 Pa.C.S. § 6102(a)(5).

4. Whether the trial court abused its discretion and committed an error of law by improperly relying on ongoing custody proceedings and disputes when adjudicating Appellant's Protection from Abuse Petition, rather than independently

---

[1] Such a lengthy concise statement of matters complained of on appeal is contrary to Rule 1925(b)(4), but we decline to find it so non-conforming as to effectively preclude meaningful appellate review.

applying the statutory standards of the Protection From Abuse Act.

Brief of Appellant at 5.

We review PFA orders pursuant to the following standard:

In the context of a PFA order, we review the trial court's legal conclusions for an error of law or abuse of discretion. The PFA Act does not seek to determine criminal culpability. A petitioner is not required to establish abuse occurred beyond a reasonable doubt, but only to establish it by a preponderance of the evidence. A preponderance of the evidence standard is defined as the greater weight of the evidence, *i.e.*, enough to tip a scale slightly.

*E.K. v. J.R.A.*, 237 A.3d 509, 519 (Pa. Super. 2020) (citations, quotation marks, and brackets omitted).

Furthermore,

"[W]e review the evidence of record in the light most favorable to, and grant all reasonable inferences to, the party that prevailed before the PFA court." *Kaur v. Singh*, 259 A.3d 505, 509 (Pa. Super. 2021). "Assessing the credibility of witnesses and the weight to be accorded to their testimony is within the exclusive province of the trial court as the fact finder." *S.G. v. R.G.*, 233 A.3d 903, 907 (Pa. Super. 2020) (citation, quotation marks, and brackets omitted). "Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence." *W.C.F. v. M.G.*, 115 A.3d 323, 326 (Pa. Super. 2015).

*Medina v. Green*, 348 A.3d 1113, 1117 (Pa. Super. 2025).

LaPenta's issues coalesce to contend that the trial court performed an erroneously limited review of her allegation of abuse when, she maintains, it conducted only a Subsection 6102(a)(2) inquiry into whether she was placed in "reasonable fear of *imminent* serious bodily injury" and forwent a separate Subsection 6102(a)(5) inquiry addressing her claim that Fagan "knowingly

engag[ed] in a *course of conduct* or repeatedly commit[ed] acts toward [her], including following [her], without proper authority, under circumstances which place[d] [her] in reasonable fear of bodily injury."  23 Pa.C.S. § 6102(a)(5). **See** *infra*.  We disagree with Appellant's characterization of the scope of the trial court's Subsection 6102(a) inquiry.

"[T]he purpose of the PFA Act is to protect victims of domestic violence from the perpetrators of that type of abuse and to prevent domestic violence from occurring."  **Diaz v. Nabiyev**, 235 A.3d 1270, 1272 (Pa. Super. 2020) (quoting **Ferko-Fox v. Fox**, 68 A.3d 917, 921 (Pa. Super. 2013)).  Under the Act, a trial "court may grant any protection order or approve any consent agreement to bring about a cessation of abuse of the plaintiff or minor children."  23 Pa.C.S.A. § 6108(a).  Relevant to the present case, the PFA Act defines "abuse" as "the occurrence of one or more of the following acts between family or household members, sexual or intimate partners of persons who share biological parenthood:

> . . .

> (5) Knowingly engaging in a course of conduct or repeatedly committing acts toward another person, including following the person, without proper authority, under circumstances which place the person in reasonable fear of bodily injury.

23 Pa.C.S.A. § 6102(a)(5).

This Court has explained:

> In the context of a PFA case, the court's objective is to determine whether the victim is in reasonable fear of bodily injury.  The intent of the alleged abuser is of no moment.  Moreover, this Court

has held that past acts are significant in determining the reasonableness of a PFA petitioner's fear. As the goal of the Act is to prevent physical and sexual abuse, a victim does not have to wait for physical or sexual abuse to occur for the Act to apply.

***K.B. v. Tinsley***, 208 A.3d 123, 128 (Pa. Super. 2019) (citations and quotation marks omitted). "[A] PFA petitioner is not required to file a police report, nor is it necessary for her to introduce medical evidence of an injury. The petitioner's testimony is sufficient if it is believed by the trial court." ***Custer v. Custer***, 933 A.2d 1050, 1058 (Pa. Super. 2007) (*en banc*) (citations omitted).

The record shows the trial court, with the Honorable Atinuke B. Moss presiding, reviewed the evidence offered at the approximately one-hour long PFA hearing and determined that Ms. LaPenta failed to prove by a preponderance of the evidence that Mr. Fagan engaged in a pattern of behavior that placed her in reasonable fear of bodily injury, as was required under Section 6102(a)(5).[2] Specifically, the trial court confirmed that it was not taking LaPenta's accusations in isolation and was, consistent with the requirements of Section 6102(a)(5), considering all the text messages presented. Having done so, the court continued, it found that "there's not been one threat to Ms. Lapenta. . . . And it's been three years of no contact

---

[2] During the trial court's discussion of Subsection 6102(a)(5) in open court, it conflated the standards of subsections 6102(a)(2) and (a)(5) by referring to LaPenta's requirement to prove a reasonable fear of *imminent* bodily harm, which is exclusively a subsection (a)(2) requirement. Nevertheless, the trial court ultimately undertook an appropriate Subsection 6102(a)(5) review of whether Fagan had engaged in a pattern of behavior that placed LaPenta in reasonable fear of bodily injury. *infra*.

and with the same level of discourse between the two, and it has never escalated into anything physical." N.T., 12/11/25, at 79.

To Ms. Lapenta's reference to Fagan's calling her a "cunt" 143 times as reflected in the plaintiff's exhibit of text messages and correspondences between the parties, the trial court acknowledged that it was "extremely offensive," but that when viewed within all circumstances, he was probably using that same word repeatedly to "get under [LaPenta's] skin." N.T. at 81. "This is a pattern of him calling you a series of names." N.T. at 85. To Appellant's final entreaty that this was a pattern of abuse falling under Section 6102(a)(5), the trial court responded that "it's a pattern of him not doing anything." N.T. at 85.

Declining to find that Fagan's communications, made in the context of continued disagreements on custody matters, caused in LaPenta any reasonable fear of bodily injury or brought him within the scope of the PFA Act and its concerns with "abuse," the trial court denied LaPenta's petition. N.T. at 86-87.

In the present appeal, the trial court has authored a Pa.R.A.P. 1925 opinion addressing the Subsection 6102(a)(5) question of whether Fagan's record of correspondence constituted a course of conduct or repeatedly committed acts that placed Lapenta in reasonable fear of bodily injury:

> [LaPenta] further testified that [Fagan] repeatedly sent her text messages and emails containing vulgar and offensive language. The [trial court] acknowledges that Fagan used excessively vulgar name-calling in his communications with LaPenta. However, the trial court also noted that these messages arose in the context of

disputes concerning LaPenta's alleged withholding of the parties' child.

. . .

LaPenta argued [also] that Fagan threatened her when he stated that she would "get chopped up like the snake you are." However, after reviewing the full text message entered into the record, the [trial court] found that the statement was made in reference to an upcoming custody court date. Fagan stated, "I really can't wait until Tuesday. You trashed the judge and asked for a recusal. You're going to get chopped up like the snake you are." N.T. [12/11/25] at 19:25; 20:1-2. The trial court interpreted this language as hyperbolic commentary predicting an unfavorable outcome for LaPenta in the custody proceedings, rather than a threat of physical harm. The trial court did not find that this statement placed Appellant in reasonable fear of bodily injury.

While the trial court found [Fagan's] communications to be inappropriate, vexatious, and offensive, it reiterates that the purpose of the Protection from Abuse Act is not to shield parties from annoyance or verbal hostility, but to prevent physical and sexual abuse. The trial court did not find that Fagan's communications constituted abuse within the meaning of the Act, nor did it find that they placed LaPenta in reasonable fear of bodily injury.

Additionally, there was no credible testimony that Fagan followed, stalked, or harassed LaPenta. To the contrary, Fagan asserted that LaPenta was the party engaging in such conduct. LaPenta introduced a video posted by Fagan on social media, which allegedly depicted LaPenta repeatedly driving past a bar where Fagan was seated outside. LaPenta contended that the video was posted to incite others against her. N.T. at 64-70. Even if true, the trial court did not find this evidence sufficient to establish a course of conduct constituting abuse under the statute.

. . .

While the trial court found the communications to be inappropriate, vexatious, and offensive, it reiterates that the purpose of the Protection from Abuse Act is not to shield parties from annoyance or verbal hostility, but to prevent physical and sexual abuse. The trial court did not find that Fagan's

- 7 -

communications constituted abuse within the meaning of the Act, nor did it find that they placed LaPenta in reasonable fear of bodily injury or harm.

TCO, 01/28/26, at 3-4.

Because the trial court identified no threat of violence, explicit or implied, in any of Fagan's communications, it declined to find that they caused in LaPenta a reasonable fear of bodily injury. As such, it recommended to LaPenta that she pursue a claim through the custody court, where, the trial court believed, Fagan's offensive communications likely would be grounds for a finding of contempt of a standing order.

Viewing the record under our standard of review, we discern no basis on which to undo the order of the trial court. The record of the written communications between the estranged couple is replete with Fagan's incessant use of vulgar name-calling but devoid of any use of language threatening language expressing or implying he will cause her bodily harm. His general use of profanity and specific use of a debasing curse word instead of LaPenta's name is malicious and shameful, but we cannot find legal error with the trial court's finding of fact announced at the conclusion of the hearing that the constant repetition of the word in this matter seemed at most an annoyance to LaPenta, particularly where it was accompanied by neither threatening language nor a history of past acts that would lower the threshold of what constitutes a reasonable fear of bodily injury in LaPenta's case. *See* *K.B.*, *supra*. Further evidence of the minimal effect that Fagan's use of the word had on LaPenta was her ability to stay composed and on message in the

parties' written correspondences.  For these reasons, we discern no error with the order dismissing Ms. LaPenta's Petition for Protection from Abuse.

Order Affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/23/2026