J-A15042-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| L.S.L., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | |
| R.A.L. | : | No. 269 MDA 2017 |

Appeal from the Order entered January 20, 2017
in the Court of Common Pleas of Luzerne County,
Civil Division, No(s): 13285 of 2010

BEFORE:  MOULTON, SOLANO and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:　　　　　**FILED AUGUST 15, 2017**

L.S.L. ("Mother") appeals from the Order granting R.A.L. ("Father") sole physical and legal custody of Z.L. ("Child"), and Mother supervised partial physical custody of Child.[1]  We affirm.

In its Opinion, the trial court set forth a recitation of the protracted procedural history, which we adopt for the purpose of this appeal.[2]  **See** Trial Court Opinion and Order, 1/20/17, at 2-9.

Following hearings, the trial court granted Father sole legal and physical custody of Child.  The trial court also granted Mother supervised partial physical custody and daily unsupervised phone contact with Child.

---

[1] Also pursuant to the Order, the trial court denied Mother's Petition for Relocation as moot based upon its award of legal and physical custody of Child to Father.

[2] Mother and Father were married in June 2008.  They each had two children from prior relationships.  Mother and Father divorced in June 2012. Currently, Mother lives in Sunapee, New Hampshire, and Father lives in Kingston, Pennsylvania.

Based upon this ruling, the trial court found no basis in law to address Mother's Petition for Relocation. Mother filed a timely Notice of Appeal and a Pennsylvania Rule of Appellate Procedure 1925(b) Concise Statement.

On appeal, Mother raises the following questions for our review:

I.  Whether the [trial] court erred in applying the best interest of the child standard to the factors for determining custody per 23 Pa.C.S.A. § 5328[,] and not granting primary physical and legal custody to [M]other[?]

II.  Whether the [trial] court erred in failing to apply the factors for determining relocation per 23 Pa.C.S.A. § 5337[,] and not granting the relocation of [C]hild to New Hampshire[?]

III.  Whether the [trial] court erred in admitting the guardian *ad litem*'s report[,] and thereafter relying upon it[?]

Mother's Brief at 3.

This Court's standard and scope of review of custody orders is as follows:

The appellate court is not bound by the deductions or inferences made by the trial court from its findings of fact, nor must the reviewing court accept a finding that has no competent evidence to support it. However, this broad scope of review does not vest in the reviewing court the duty or the privilege of making its own independent determination. Thus, an appellate court is empowered to determine whether the trial court's incontrovertible factual findings support its factual conclusions, but it may not interfere with those conclusions unless they are unreasonable in view of the trial court's factual findings; and thus, represent a gross abuse of discretion.

*A.V. v. S.T.*, 87 A.3d 818, 820 (Pa. Super. 2014) (citation, ellipses and brackets omitted). Additionally, we have explained that

[o]n issues of credibility and weight of the evidence, we defer to the findings of the trial court[,] who has had the opportunity to observe the proceedings and demeanor of the witnesses. The parties cannot dictate the amount of weight the trial court places on evidence. Rather, the paramount concern of the trial court is the best interest of the child. Appellate interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion. The test is whether the evidence of record supports the trial court's conclusions.

*Id.* (citations, paragraph breaks and brackets omitted); *see also Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (stating that "[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned.") (citation omitted).

In any custody case decided under the Child Custody Act, the paramount concern is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338; *see also W.C.F. v. M.G.*, 115 A.3d 323, 326 (Pa. Super. 2015). In assessing the child's best interest, the trial court must consider the seventeen custody factors set forth in 23 Pa.C.S.A. § 5328(a). *W.C.F.*, 115 A.3d at 326. Section 5328(a) provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

- 3 -

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, education and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328.

"All of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.*, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted). Moreover, section 5323(d) mandates that, when the trial court awards custody, it "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d). The trial court may not merely rely upon conclusory assertions regarding its consideration of the section 5328(a) factors in entering an order affecting custody. *M.E.V. v. F.P.W.*, 100 A.3d 670, 681 (Pa. Super. 2014). However, "[i]n expressing the reasons for its decision, there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *A.V.*, 87 A.3d at 823 (citation and quotation marks omitted).

In her first claim, Mother contends that the trial court should have granted her legal and physical custody of Child. Mother's Brief at 9. Mother argues that the trial court erroneously applied the factors set forth in section 5328. *Id.* at 9-10. Specifically, Mother challenges the trial court's findings under subsections (1), (3), (4), (5), (6), (7), (8), (9), (10), (11), (12), (13), and (15). Mother's Brief at 11-27.

With regard to subsection (1), Mother asserts that the trial court erred in finding that Father was best suited to encourage contact between Child and the other parent. *Id.* at 11. Mother claims that the trial court incorrectly found that her request for relocation was an attempt to limit contact between Child and Father. *Id.* Mother further claims that the trial court failed to consider Father's attempts to limit her contacts with Child. *Id.* at 11, 12.

With regard to subsection (3), Mother claims that the trial court erroneously found that both parties were capable of providing for the needs of Child, and should have weighed this factor in favor of Mother. *Id.* at 12. Mother argues that in her limited capacity to parent Child, she has provided Child with clothes. *Id.* Mother asserts that while Father has performed some parental duties, he relies on babysitters to supervise Child. *Id.* at 13. Mother further asserts that Father has failed provide a proper car seat for Child, and has dressed Child inappropriately on occasion. *Id.*

With regard to subsection (4), Mother argues that the evidence does not support the trial court's finding that this factor weighs in favor of Father. *Id.* Mother asserts that while the trial court pointed to numerous filings by Mother concerning Child's education and family life in weighing this factor in favor of Father, it did not consider Father's filings. *Id.* at 13, 15. Mother points out that Father failed to provide her with any information involving Child's activities, education, or health. *Id.* at 13. Mother further asserts that the trial court failed to consider her frequent trips from New Hampshire to see Child. *Id.* Mother additionally claims that there were abuse allegations made against Father. *Id.* at 14-15.

With regard to subsections (5) and (6), Mother asserts that the trial court erred in finding these factors to be neutral between the parties, and should have found that the factors weigh in favor of Mother. *Id.* at 15-16, 17. Mother points out that Child would live with Child's brothers if she lived in New Hampshire. *Id.* at 16. Mother claims that Father failed to present any evidence, other than his own testimony, demonstrating Child's relationships with his family members. *Id.* at 17.

With regard to subsection (7), Mother contends that the trial court's finding that Child loved both parents was illogical in light of its ultimate conclusion. *Id.* Mother argues that her alleged behavior did not have such a negative impact on Child's relationship with Father that she was prevented from having unsupervised contact with Child. *Id.* Mother also asserts that

the trial court should have given more weight to Child's testimony that she wanted to spend more time with Mother and attend school in New Hampshire. *Id.* at 18.

With regard to subsection (8), Mother contends that the trial court relied on evidence that is not relevant to this case. *Id.* Mother argues that the only relevant issue raised by the trial court was Mother's accusation that Father could not properly care for Child. *Id.* at 18-19. Mother again claims that the mere filing of a request for relocation does not evidence her intent to limit contact between Father and Child. *Id.* at 19.

With regard to subsection (9), Mother asserts that the trial court erred in finding that this factor weighs in favor of Father based solely upon negative actions by Mother. *Id.* at 19-20.

With regard to subsection (10), Mother argues that the trial court's finding that both parents are able to attend to the daily needs of Child was erroneous. *Id.* at 20. Mother asserts that there were legitimate concerns regarding Child's car seat and Father's inattention to Child's health care needs. *Id.* at 20-22; *see also id.* at 21 (wherein Mother argues that Father's allegations that Mother takes Child on too many unnecessary doctor appointments is not supported by the record). Mother claims that Father did not adequately deal with Child's bullying concerns at school and cannot name any of Child's friends. *Id.* at 21. Mother additionally argues that Father did not present any evidence of Child's life, and does not exhibit an

understanding of the value of Mother's presence in Child's home life. *Id.* at 20, 22-23. Mother contends that the trial court merely emphasized her actions without considering Father's negative impact on Child. *Id.* at 23, 24.

With regard to subsection (11), Mother argues that the trial court erred in finding that this factor weighs in favor of Father based solely on the fact that she voluntarily moved to New Hampshire. *Id.* at 24. Mother asserts that the trial court failed to consider any of the reasons she moved to New Hampshire, including to care for her elderly mother and the fact that her two sons have established educational and social lives in that state. *Id.*

With regard to subsection (12), Mother contends that the trial court's conclusion that her move to New Hampshire prevented her from making child care arrangements was illogical. *Id.* at 24-25, 26. Mother argues that the evidence demonstrated that she could provide care for Child when she is not in school. *Id.* at 25. Mother further claims that Father allows Child to "amuse herself" while he works and uses a large variety of babysitters. *Id.*

With regard to subsection (13), Mother claims that the trial court erred in weighing the factor in favor of Father. *Id.* at 26-27. Mother argues that the trial court improperly relied upon prior decisions in the case to find that she was at fault for the animosity between the parties. *Id.* at 26. Mother contends that she undertook various actions to protect Child. *Id.* at 27.

With regard to subsection (15), Mother claims that contrary to the trial court's finding that it needed more information about Mother's mental state,

she presented evidence indicating that she was receiving treatment from two separate counselors. *Id.*

In its Opinion, the trial court set forth the relevant testimony from the hearings; found that Mother was non-responsive and evasive during her testimony; addressed the best interests of Child, including an analysis of the best interest factors; and determined that it was appropriate to award Father sole legal and physical custody of Child. **See** Trial Court Opinion and Order, 1/20/17, at 10-24, 29. We decline Mother's invitation to disturb the trial court's findings and weighing of the evidence, in favor of the findings and inferences that Mother proposes. **See M.J.M. v. M.L.G.**, 63 A.3d 331, 337 (Pa. Super. 2013) (rejecting appellant/mother's argument asking this Court to reconsider the trial court's findings and credibility determinations with regard to the best interest factors); **see also C.A.J. v. D.S.M.**, 136 A.3d 504, 506 (Pa. Super. 2016) (stating that "[w]e defer to the trial [court] regarding credibility and the weight of the evidence."). Further, our review of the record reveals that the trial court's findings of fact and cogent analysis are supported by the record. **See C.A.J.**, 136 A.3d at 506 (stating that this Court cannot reweigh the evidence supporting the trial court's determinations so long as there is evidence to support the findings). Therefore, we conclude that the trial court did not abuse its discretion, and we defer to its custody decision. **See** Trial Court Opinion and Order, 1/20/17, at 10-24, 29; **see also A.V., supra** (stating that "[a]ppellate

interference is unwarranted if the trial court's consideration of the best interest of the child was careful and thorough, and we are unable to find any abuse of discretion.").

In her second claim, Mother contends that the trial court erred by failing to apply the relocation factors at 23 Pa.C.S.A. § 5337. Mother's Brief at 28. Mother argues that a review of the factors would have led the trial court to grant relocation. *Id.* at 29-32.[3]

Here, the trial court ordered that, because Father retained both legal and physical custody of Child, "there is no reason or basis in law for the court to address [] Mother's Petition for Relocation." Trial Court Opinion and Order, 1/20/17, at 25. We discern no abuse of discretion, as the issue of relocation became moot based upon the fact that Child would not be moving and would continue to reside in Pennsylvania. *See, e.g., D.K. v. S.P.K.*, 102 A.3d 467, 472 (Pa. Super. 2014) (noting that the relocation provisions set forth in section 5337 must be addressed where a change in residence of the child affected the non-relocating parent's ability to exercise custodial rights).

---

[3] We note that with regard to some of the factors listed in section 5337, Mother incorporates her argument from the first issue on appeal. *See, e.g.,* Mother's Brief at 30, 32. It is well-settled that incorporation by reference does not constitute a properly developed argument. *See Hrinkevich v. Hrinkevich*, 676 A.2d 237, 241 (Pa. Super. 1996); *see also Commonwealth v. Briggs*, 12 A.3d 291, 342–343 (Pa. 2011).

In her third claim, Mother contends that the trial court erred in admitting and relying upon the guardian *ad litem*'s report. Mother's Brief at 32, 36, 37-38. Mother argues that the report primarily reiterates information that had been established in prior proceedings and was thus irrelevant. ***Id.*** at 33-35. Mother further argues that even if the report was relevant, it was cumulative of other evidence and should not have been given any weight by the trial court. ***Id.*** at 35, 37. Mother also claims that the guardian did not conduct an extensive and thorough investigation prior to producing the report as required by 23 Pa.C.S.A. § 5334. Mother's Brief at 36-37.

Here, Mother failed to raise this claim in her Rule 1925(b) Concise Statement. Thus, the claim is waived on appeal. ***See Ramer v. Ramer***, 914 A.2d 894, 902 (Pa. Super. 2006) (concluding that mother's claim in a custody case was waived on appeal because it had not been raised in her Rule 1925(b) statement); ***see also*** Pa.R.A.P. 1925(b)(4)(vii).

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/15/2017

- 12 -

| ████████ R.A.L. | :IN THE COURT OF COMMON PLEAS |
| Plaintiff | OF LUZERNE COUNTY |
| Vs. | : CIVIL ACTION – LAW |
| | IN CUSTODY |
| ████████ | : No. 13285 OF 2010 |
| Defendant L.S.L. | |

## OPINION AND ORDER

This matter comes before the Court based upon the Petition for Primary Custody and Relocation filed by the Mother on March 14, 2016. She is requesting primary custody and the right to relocate to New Hampshire with the party's minor child, ████████ who was born on August █ 2009. This matter has a protracted history which was primarily heard by Senior Judge Charles C. Brown, Jr., who retired on December 31, 2015. The parties have agreed that all prior proceedings are to be incorporated into this proceeding. A thorough review of the procedural history is necessary as the minor child is seven (7) years old.

## PROCEDURAL HISTORY

The following is a history of relevant proceedings and orders:

1

September 28, 2010- Father files a divorce complaint which includes a request for custody of the child. The parties were separated at the time with both living in Kingston, Luzerne County.

October 29, 2010 – The initial custody order is entered indicating that the Father shall have partial custody with the child at the marital home every Monday, Wednesday and Friday from 9:00 a.m. to noon.

March 25, 2011- Mother was granted primary physical custody of the child and the parties were awarded shared legal custody. The Father's partial custody consisted of alternating weekends beginning every Saturday at 2:00 pm until the following Sunday at 6:00 p.m.

July 19, 2011- The Court ordered that Robert L. Tanenbaum, Ph.D. was to perform a comprehensive individual, psychological evaluation of Mother and Father including any recommendations, if necessary, for additional services to be provided the parties, including a custody evaluation. Ultimately, Dr. Tanenbaum issued a report on June 19, 2012 and testified before Judge Brown on September 19, 2012

Following this order, there were numerous petitions filed by both parties requesting Modification of the custody order, Special Relief and/or requests that both parties be found in Contempt. In fact, the court found the Mother to be in

2

contempt on six different occasions including May 10, 2012 (2), September 25, 2013 (1), November 20, 2013 (1) and September 25, 2014 (2).

December 11, 2013- Following a trial, the court issued an Opinion and Order arising out of numerous proceedings filed by both parties between March 25, 2011 and April 12, 2012. In its opinion, the court denied the Mother's request to Relocate to the state of New Hampshire and further ordered that the parties shall have shared legal custody of Child with primary physical custody awarded to the Father and the Mother having partial custody on alternating weekends from Friday at 5:00 p.m. until Monday at 5:00 p.m., along with every Wednesday from 5:00p.m. until Thursday at 12:00 noon.

Judge Brown discussed the required factors contained in 23 Pa.C.S.A. 5328(a) and concluded that the Father was the parent more likely to encourage and permit frequent continuing contact with the Mother, that the Mother has made numerous attempts to turn Child against her Father and has further claimed that Child is not safe with the Father.

The court was concerned with the allegations made by the Mother to Luzerne County Children and Youth alleging sexual abuse and poor hygiene by the Father, neglecting and/or mistreating of Child by the Father and indicated that the Mother's influences might cause Child to become alienated from her Father. The

3

court noted that there was no evidence to support any of the allegations made by the Mother against the Father.

The court pointed out that it had seriously considered awarding sole legal custody to one of the parents with the belief that such an order would go a long way toward reducing much of the conflict between the parents which was not in the child's best interest. However, the court awarded primary custody to the Father. Further, the court directed that numerous steps be taken in an attempt to reduce the conflict between the parents and to protect the child.

At the time that this Opinion and Order was issued, both parents were still residing in Kingston, Luzerne County, Pennsylvania.

The Mother appealed Judge Brown's decision to the Pennsylvania Superior Court.

September 26, 2014 - The Pennsylvania Superior Court issued a non-precedential decision to No. 203 MDA 2014, cited at 107 A. 3d 238 (2014) which was a "Decision without Published Opinion". The Superior Court sustained the decision of Judge Brown and pointed out that

> "The trial court thoroughly discussed all the factors individually, including child's relationship with both Mother's and Father's other children and the inter- parental conflict that existed".

4

Included in the decision was a discussion of the report and testimony of Dr.

Robert L. Tanenbaum who had conducted individual psychological evaluations of

both Father and Mother as well as a custody evaluation, and the Court stated the

following:

"The custody evaluator's testimony is not as clear-cut as the Mother
has alleged. In his report, Dr. Tanenbaum recognized that the level of
conflict between the parties was high. The conflict was so great that Dr.
Tanenbaum considered reversing the custody schedule to reduce the
child's exposure to Mother's distress. However, Dr. Tanenbaum rejected
that recommendation because it was not what Father was seeking at the
time evaluation began. Instead, Dr. Tanenbaum recommended keeping
the custody schedule the same, but with the option of the Father receiving
more time if Mother's allegations against him continued. However, at the
time of the hearing, Dr. Tanenbaum testified that, if Mother's allegations
against Father were found to be without merit, it would be in child's best
interest for Father to have primary custody. Dr. Tanenbaum testified that
the child was at risk of being alienated from Father based upon Mother's
actions, including Mother's practice of peppering the Children and Youth
Agency with unsubstantiated reports of abuse. Dr. Tanenbaum stated that
Father was more likely to encourage and permit contact between Mother
and child".

The Superior Court further noted that the trial court focused upon the fact

that Mother's actions were causing conflict and increasing child's risk for

alienation, and the fact that Father was more likely to encourage contact between

child and Mother while Mother was more likely to limit Father's access to child.

The court stated:

"Father testified Mothers actions that interfered with his limited custodial
time with child. The trial court determined that it was required to change

5

physical custody in order to minimize the conflict and its repercussions for child".

Unfortunately, the decision by Judge Brown did little to reduce the disharmony and hostile relationship between the parents. On February 27, 2014, Mother filed separate Petitions for Special Relief, Modification of Custody Order/Contempt and Contempt. On the same day, the Father also filed a Petition for Contempt and request for Emergency Special Relief. Judge Brown denied the Petition for Modification because of the pending appeal to the Pennsylvania Superior Court. Shortly thereafter, the Father filed a Petition for Contempt on April 22, 2014, a Petition for Emergency Special Relief on May 15, 2014 and a Petition for Contempt and Emergency Special Relief on August 28, 2014.

On September 25, 2014, Judge Brown issued an order dealing with the various petitions filed by both parties. He denied two Petitions for Contempt filed by the Mother against the Father as well as denying her Petition for Special Relief and to Modify prior custody orders. The Father had filed six Petitions for Contempt against the Mother, four of which were denied and two of which were granted. The Mother was directed to pay a total of $700.00 to Father's counsel as reimbursement for legal fees incurred by the Father.

As a result of the new filings, the court issued an order on December 17, 2014 whereby Ned Delaney, a licensed psychologist was appointed by the court to

6

conduct a comprehensive psychological evaluation of the Mother which included concerns raised by the Father as well as whether there was a need for supervised custody and or services. The court included a temporary holiday schedule and indicated that the Mother would have one phone call per day at 4:00 p.m.

As previously mentioned, The Pennsylvania Superior Court issued its decision on September 26, 2014, sustaining Judge Brown's Opinion and Order of December 11, 2013. Despite this, the hostilities continued with the Mother filing a Petition for Contempt on September 12, 2014, followed by an Emergency Petition for Special Relief/Contempt filed on October 21, 2014, and a Petition for Modification of Custody Order filed on November 21, 2014. In the Petition for Modification, the Mother alleged that she was going to relocate to the state of New Hampshire on December 19, 2014 and was requesting modification of the existing custody order allowing her substantial partial custody during the summer months as well as one weekend per month, equal division of the secular and Jewish holidays, equal division of school vacation periods and daily restricted phone contact with the minor child. This was followed by the Father filing a Petition for Modification, requesting sole legal custody of Child ██, a request to find the Mother in Contempt and a request for Emergency Special relief. His petition was filed on December 12, 2014.

7

The Mother followed up with a Petition for Contempt/Special Relief which was filed on March 25, 2015. The Father filed an Amended Petition for Modification of Custody, Contempt and Emergency Special Relief which he followed up with an Updated Petition for Modification, Contempt and Emergency Special Relief on July 9, 2015. On the following day, July 16, 2015, the Mother filed another Petition for Contempt/Special Relief.

On the same day, the court continued a hearing that had been scheduled for July 16, 2015 until further order of court.

As a result of the recent filings, Judge Brown issued an order on July 16, 2015 appointing Janet Conser, Esquire as Guardian ad Litem for the minor child pursuant to Pa.R.C.P. 1915.11-2. In addition, he issued an order suspending all previous orders regarding periods of custody of Child ▇▇ with her Mother and directed that any other partial custody would be supervised at times, place and under conditions agreed upon by the parties and that the Father was granted sole legal physical custody of Child ▇▇, without prejudice to the Mother.

Judge Brown scheduled a review hearing for August 27, 2015 which was continued to October 29, 2015. The review hearing was again continued by the court by order dated November 16, 2015 and was rescheduled for December 10, 2015. Further, the custody supervisor, Nancy O'Kane was directed to attend the

8

hearing and to also prepare a report or notes regarding supervised phone contact and supervised visitation of the Mother with the child. Further, the order indicated that all contact including telephone contact with the Mother shall remain supervised. The November 16, 2015 order was the last order issued by Judge Brown who retired at the end of December, 2015. The hearing scheduled for December 10, 2015 was not held.

On March 14, 2016 the Mother filed a Petition for Primary Custody and for Permission to Relocate to the state of New Hampshire where she was living at the time, having moved to New Hampshire sometime during the fall of 2015. The Mother apparently served the Father with her Affidavit and Notice of Relocation in January of 2016 and the Father subsequently filed his Counter-affidavit regarding relocation indicating his objection to the proposed relocation.

Subsequently, this matter was assigned to the undersigned who held hearings on May 4, 2016, May 23, 2016, July 18, 2016, August 15, 2016 and November 1, 2016 on the Mother's request to change primary custody and allow her to relocate with the minor child to New Hampshire. At the end of the final hearing, the parties were granted additional time to submit Findings of Fact and Conclusions of Law to the court.

# DISCUSSION

As previously mentioned, on December 11, 2013, The Honorable Charles L.
Brown issued an Opinion and Order granting shared legal custody of ~~███~~ Child to her
parents with the Father having primary physical custody. At the time of this order,
the Mother was living in Kingston, Pennsylvania and she received partial physical
custody on alternating weekends from Friday at 5:00 p.m. until Monday at 5:00
p.m. and every Wednesday from 5:00 p.m. until Thursday at 12:00 noon. Judge
Brown's Opinion and Order of December 11, 2013 was appealed by the Mother to
the Pennsylvania Superior Court who issued a decision on September 26, 2014
denying the appeal.

In this proceeding, the Mother is requesting that she be awarded primary
custody of her daughter ~~███~~ Child who is presently seven years old, having been born
on August 9, 2009. The Mother presently resides in Sunapee, New Hampshire.
The Father resides in Kingston, Pennsylvania. The current order of July 16, 2015
provides that the Father has sole legal and physical custody and the Mother has
supervised partial custody at times, place and under conditions to be agreed upon
by all parties. On November 16, 2015, a subsequent order indicated "that all
contact, including phone contact, with the Mother shall remain supervised." The

present supervisor is Nancy O'Kane. The Mother is seeking primary custody and permission to have Child relocate with her to her home in New Hampshire.

This Court held hearings on five separate days between May 4, 2016 and November 1, 2016 and heard from the parties, as well as various witnesses including Ned Delaney, a licensed psychologist appointed by Judge Brown on December 17, 2014 to conduct a comprehensive psychological evaluation of the Mother. In addition, the court received testimony from Janet Conser, Esquire who was appointed by Judge Brown as the Guardian ad Litem on July 16, 2015. One of the primary concerns of Judge Brown was the Mother's repeated allegations of sexual abuse by the Father of the child as well as numerous allegations regarding various medical issues including Child's hygiene and the manner in which the Father cared for Child which the Mother felt were unhealthy. These allegations were the subject of numerous proceedings that were heard by Judge Brown. It was Mr. Delaney's belief that the Mother's intentions and beliefs were so strong, that if an opportunity arose, she would continue to make allegations and charges against the Father. Mr. Delaney had previously indicated that "it would be prudent for the Mother to engage a therapist to examine if her persistent allegations, the costs and consequences, and the burdens placed upon her daughter have had a beneficial impact on the Mother/daughter relationship, let alone the Mother's emotional and

11

mental well-being". Mr. Delaney testified that there was no information that was presently available to indicate that she had sought and received any such therapy.

He pointed out that a review of the record indicates that the allegations made by the Mother had been repeatedly made over and over and generally were unsubstantiated upon investigation. He referenced the fact that the Mother continued to raise hygiene issues with the current supervisor of the phone calls and visits that she had with ████ Child. He testified that his recommendation remained the same as it was on April 21, 2015 and that is that supervised visits continue at least through the upcoming school year.

In addition, the testimony of Janet Conser, Esquire was also presented to the court. She had served as Guardian ad Litem since July of 2015and had met with the parties and the child. She referenced the fact that when she interviewed the Mother, the Mother raised concerns that the Father was not providing proper care with regard to various medical issues both in the past and at the time the Mother met with the Guardian ad Litem. She indicated that she agreed with Mr. Delaney's position that the Mother's attitudes and beliefs remain the same. When the Mother was asked by the Guardian ad Litem if she regretted any of her prior actions, she indicated that she did not, except for one exception and that was when she called the Father a child molester in front of ████ Child. However, she would not accept responsibility for any other accusations that she made against the Father including

12

the alleged sexual abuse and neglect of **Child**. The guardian indicated that the Mother would not accept the lack of justification for the sexual allegations, no matter what.

The guardian also indicated that the Mother stated she is attending counseling in New Hampshire and Northeastern Pennsylvania but did not present any evidence as to the nature of the counseling she is receiving. She further pointed out that the Mother has not presented any evidence to refute the prior court's finding that her conduct when she had unsupervised visits had a serious adverse effect on the relationship between **Child** and her Father and that she has shown no insight as to how her conduct can be harmful to **Child**, both emotionally and as it relates to her relationship with her Father. She felt that it was unlikely that this conduct will change without Mother's recognition of the effect of her conduct and counseling to address these issues.

The guardian's recommendation was that the Mother's request for relocation be denied and that the supervised visits continue until such time that the Mother presents evidence of counseling that addresses the issues raised by Dr. Tennenbaum's report and Mr. Delaney's report and recommendations.

The guardian further indicated that she felt that the Mother was loving and cared about **Child** and that **Child** loved her Mother. However, the Mother has not

13

taken the necessary steps to recognize that her conduct is having a very negative

effect on Child and that it's probably effecting her relationship with her Father.

In addition, the Father called Dr. Michael Harris, a retired pediatrician who primarily treated Child since birth. He indicated that the Mother has made allegations against the Father claiming that he had abused Child since she was a baby. None of the allegations were determined to be true. He had great concern regarding the Mother's repeated claims, particularly with regard to a condition known as "Munchausen by Proxy." This occurs when a parent finds things wrong with a child simply for attention. He related that there were six or seven times that the Mother brought Child in for problems and there was nothing there. The time period was from infancy until 2013 or 2014.

The Mother testified in support of her Petition for primary custody and request to allow Child to relocate with her to New Hampshire.

As the trier of fact, the court assessed the credibility and observed the demeanor of each witness who testified. As to Mother, under cross-examination, she was not responsive to many questions that were directed at her. She was evasive, repeatedly claiming that she didn't understand the question or that she didn't remember. She was asked about a conversation she had with Nancy O'Kane who had recorded the conversation that had taken place on October, 5, 2015. Ms.

14

O'Kane indicated that the Mother claimed that the Father had sex with a bi sexual

Child

female while ▓ was in the same room and that he is allowing a student to take

Child                           Child

▓ shopping. She also indicated that ▓ shouldn't be camping in Vermont,

there was neglect by the Father involving medical issues and that she was going to

Child

call her attorney because ▓ was sick. Further, she testified that there were still

serious issues involving the Father including him using the wrong car seat, an

Child's

untreated planter's wart on ▓ foot and her nails are not trimmed or cleaned.

Many of these issues had been previously been ruled on by Judge Brown and

dismissed.

The court also recognizes the findings and significance of Judge Brown's

orders of December 11, 2013 and July 16, 2015 as well as the fact that the Superior

Court of Pennsylvania upheld Judge Brown's decision in September, 2014. In fact,

the Mother continued to file various petitions making allegations against the Father

subsequent to both Judge Brown's opinion of December 11, 2013 and the Superior

Court's decision on September 26, 2014. It is obvious that the Mother has not

recognized the harm that her actions and allegations are having on her daughter

and it appears that the only way that this conduct can be stopped is by severely

limiting the Mother's access to her daughter.

The paramount concern in cases involving custody of a child is the child's

best interest, based on consideration of all factors that legitimately affect the

child's physical, intellectual, moral and spiritual well-being. Bovard v. Baker, 775 A.2d 745 (2001), CWV v. KAW, 774 A.2d 745 (2001). Further, in determining what will serve the best interest of the child, the trial court must consider all of the facts and circumstances of a given case. Clapper v. Clapper, 578 A.2d 17, 396 Pa. Super 49(1990). The court must consider the procedures and legal standards set forth in the Child Custody Act, 23 Pa.C.S.A. 5321 et seq. and Section 5338 of that Act provides that, upon petition, a trial court may modify a custody order if it serves the best interest of the child. Section 5328 sets forth a list of sixteen factors that must be considered in a best interest of a child analysis in making any custody determination.

In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child. The relevant factors are set forth as follows:

1. **Which party is more likely to encourage and permit frequent and continuing contact between the child and another party;**

The court concludes that it believes that the Father is the parent more likely to encourage and permit frequent and continuing contact with the Mother. It is obvious that the Mother by her conduct has tried repeatedly to limit the contact of

16

the Father with **Child** and continues to do so simply by her request that she be allowed to have **Child** relocate with her to New Hampshire.

2. **The present and past abuse committed by a party or member of the party's household, whether there is continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child;**

The court does not find that the child has suffered from any past or present physical abuse and does not consider this factor relevant to the court's determination.

3. **The parental duties performed by each party on be half of the child;**

When **Child** is alone with either parent, it's the court's opinion that each parent is fully capable of performing the parental duties required of a parent taking care of a child of her age. Therefore, this factor is not relevant to the court's determination.

4. **The need for stability and continuity in the child's education, family life and community life;**

Without question, this factor favors the Father, as the Mother, through her actions has shown that stability and continuity are not attributes which she finds

17

important based upon her attempts to seek court intervention involving the child's education, family life and community life. She had repeatedly attempted to interfere in all three areas and has been rebuffed by the court in her efforts.

5. **The availability of extended family:**

Child

██ has 4 half siblings, N██ (14) and L█ (20) who are the children of the Father, and A████ (16) and J██ (14) who are the children of the Mother. A████ and J██ reside in New Hampshire with their Mother and the maternal grandmother. N██ and L█ reside in Hartford, Vermont and the paternal
Child
grandparents reside in Warren, New Jersey. ██ sees N██ and L█ as well as her paternal grandparents on several occasions during the year. She has not seen A████, J██ and her maternal grandmother in quite some time. All 4 children
Child
are significantly older than ██ and L█ has special needs. Unfortunately, the difference in mileage between the Father, his family, and the Mother and her
Child
family will always present difficulty for ██ to be with her extended family on both sides. Under the existing circumstances, the court does not feel that this factor favors either parent.

6. **The child's sibling relationships:**

This factor has been discussed under factor #5 and the court concludes tha this factor does not favor either parent.

18

## 7. <u>The well-reasoned preference of the child, based on the child's maturity and judgment;</u>

The court did meet with the child and recognizes that she was seven years old at the time. Based upon her testimony, it is the court's belief that [Child] ▓ loves both of her parents and likes being with both of them. The court is not surprised that the child would like to spend more time with the Mother as a result of the limited schedule of visitation that presently exists. [Child] ▓ did express the belief that she believed that the school in New Hampshire would be better for her even though she has never gone to school in New Hampshire. There was no indication that [Child] ▓ is reluctant to be with either parent. [Child] ▓ appeared to the court to be a very bright and loving child who would be able to thrive in either environment. The court notes that [Child] ▓ did express a desire to spend more time with her Mother, but considering the circumstances that she presently finds herself, it is not surprising that she feels this way. The Mother needs to take this into future consideration in light of the fact that the present schedule has been dictated by her own conduct.

## 8. <u>The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.</u>

19

The court is not concerned that the child is in any danger of physical violence from either parent. However, the court does feel that the Mother's actions clearly indicate an effort on her behalf to turn Child ██ against her Father. Her past allegations of unfounded sexual abuse by the Father, calling the Father a child molester in the presence of the child, continually claiming that the Father cannot properly care for the child and the multiple court filings attempting to interfere with the Father's custody rights are a clear indication of the Mother's attempts to turn the child against her Father. He failure to recognize the harm that she causes is evidenced by her statement to the guardian that she would not have done anything differently except when she called the Father a child molester in front of Child ██ is a clear indication how little she is concerned about the continuing relationship that the child has with her Father. This factor strongly favors the Father.

9. **Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs;**

There is no doubt that both parents love Child ██ very much. Based upon the allegations raised by the Mother against the Father which have led to multiple legal proceedings, the appointment of various experts to review and evaluate what has

20

been happening in this family, as well as the disruption that has taken place as a result of Mother's actions, the court concludes that the Mother has failed to recognize the harm and potential damage to ▮▮ Child's emotional needs. This factor undoubtedly favors the Father.

10. <u>**Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child;**</u>

Both parents are available to provide for the daily physical, emotional, developmental and educational needs of ▮▮ Child when she is in their custody, except it is the Mother who fails to recognize the importance of the need that ▮▮ Child has for her Father. She fails to understand that each has their own method for providing for these needs and both are fully capable of doing so, even if their methods may differ.

11. <u>**The proximity of the residences of the parties;**</u>

Initially, this factor should not have any relevance to this custody proceeding. However, in December of 2014, the Mother elected to move to New Hampshire to care for her Mother who lived in New Hampshire. This was a voluntary act on her part knowing that ▮▮ Child was going to remain in Kingston, Pennsylvania. She initiated the required process required for a relocation under the Pennsylvania Custody Law after she had already moved. In fact, there were

21

apparently two requests that she made to allow her to relocate which were denied by Judge Brown. She chose to move to an area which was hundreds of miles away from where her daughter was living. The court concludes that this factor significantly favors the Father.

12. **Each party's availability to care for the child or ability to make appropriate child-care arrangements:**

Both parents are available to care for Child and are fully capable of making appropriate child-care arrangements when Child is in their custody. However, the Mother has moved hundreds of miles from the child's only home she has ever known, her schools and friends, social events and her Father. Under the circumstances, she is no longer available to care for her while Child is living in her home in Kingston or to make appropriate child-care arrangements.

13. **The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

Unquestionably, the level of conflict between the parties is very high resulting in dozens of proceedings filed by both parties which include Petitions for Contempt, Special Relief, Emergency Special Relief and Modification. The

Mother has filed the majority of these proceedings and Judge Brown had ruled primarily in favor of the Father. As a result, in a few short years; custody of ▮▮▮ Child has gone from being primary with the Mother to solely with the Father with Mother's limited visitation being supervised. The court finds that this factor favors the Father.

## 14. The history of drug or alcohol abuse of a party or member of a party's household;

There is no evidence of drug or alcohol abuse by either party or any member of their households.

## 15. The mental and physical condition of a party or member of a party's household;

There is no evidence of a mental or physical condition of the Father or any member of his household which would be a relevant factor in determining custody. At the present time, the court is unable to express the same conclusion regarding the Mother without further information.

This court is aware that the primary concern in custody matters lies not with the past but with the present and future. Brooks v. Brooks, 319 Pa. Super 268 (1983). Past conduct is not relevant unless it will produce an ongoing negative effect on the child's welfare. Brooks v. Brooks, supra; In Re Leskovich, 253 Pa.

23

Super. 349, 385 A.2d 373 (1978). However, the court concludes that there is little difference between what has happened in the immediate past and what is taking place at the present time. The Mother's past behavior with respect to visitation arrangements is a relevant consideration in the assessment of her future behavior. Johns v. Cioci, 865 A.2d 931 (2004). The primary change is that the Mother has extremely limited time with her daughter. Even so, she has failed to seek counseling to deal with the issues that lead her to her negative treatment of the Father in the past and hopefully would have led to a change in her attitude and conduct. She has continued to accuse the Father of not properly caring for [Child] ███ and she has admitted to the guardian ad litem that she basically sees nothing wrong with what she has done in the past, except for calling the Father a child molester in [Child's] ███ presence.

   End of Opinion. Order attached as page 25

24

R.A.L.                        :IN THE COURT OF COMMON PLEAS

Plaintiff                      :        OF LUZERNE COUNTY

                               :

Vs.                            :        CIVIL ACTION - LAW

                               :            IN CUSTODY

                               : No.   13285 OF 2010

Defendant   L.S.L.

2011 JAN 20 PM 3:00
FILED PROTHONOTARY
LUZERNE COUNTY

## ORDER

AND NOW, this ____20th____ day of January, 2017, in

consideration of the aforesaid custody factors, the child's best interest and welfare

and the evidence presented to the court, the court finds it is in the child's best

interest and welfare, for the Father, R.A.L. ▆▆▆▆▆, to maintain sole physical and

sole legal custody of the minor child, Child ▆▆▆▆. Based upon this conclusion,

there is no reason or basis in law for the court to address the Mother's Petition for

Relocation. The Mother, L.S.L. ▆▆▆▆▆▆▆, shall have partial physical

custody as follows:

1. Mother shall have periods of supervised partial physical custody of Child ▆, at

   times, places and under conditions to be agreed upon by the parties, except

   that she shall have a minimum of three in person visits each month which

will include the Jewish holidays of Hanukah and Rosh Hashanah as well as Christmas, Thanksgiving and Mother's Day. If possible, the Mother is encouraged to include her children, A█████ and J███ in these visits.

2. The Mother shall have the right to have daily unsupervised telephone contact with ███ *Child* at 4:00 p.m. or at a time agreed to by the parties. The court further orders that this unmonitored contact may be by Skype or other electronic means for face to face communication. In addition, ███ *Child* shall have the right to call her Mother as she pleases, as long as it is convenient for the Father and does not amount to more than twice in one day.

3. That the custody supervisor, Nancy O'Kane, shall continue to supervise all in person visits of the Mother with the child which are not by telephone or other electronic means and further to continue to prepare a report or notes regarding all periods of supervised visitation and provide them to the court.

4. That the Mother engage the services of a licensed psychologist who will address the issues concerning the Mother as set forth in Judge Brown's Opinion and Order dated December 11, 2013, Dr. Robert L. Tannenbaum's report dated June 19, 2012, Ned Delaney's report dated January 8, 2015 and Attorney Janet Conser's report dated August 31, 2016. Counsel for the Mother shall provide the psychologist with copies of these reports. The name, address, telephone number and curriculum vitae of the psychologist

26

shall be provided to the court and counsel for the Father within ten (10) days of the date of this order. The psychologist shall not be a personal friend or relative of the Mother. In addition to the issues raised in the above mentioned three reports, the psychologist shall review the applicability of the Munchausen by Proxy Syndrome and its relevance to the actions of the Mother with regard to her medical treatment of the minor child. The psychologist shall provide a monthly written report to the court which includes dates of treatment, progress and prognosis. The cost of the counseling shall be the Mother's responsibility. Counseling shall begin within 15 days of the date of this order.

5. Each party shall not interfere with the other party's periods of physical custody with the minor child. Each party shall not attempt to alienate the affections of the minor child from the other party or permit any third person to attempt to alienate the affections of the minor child from the other party. Each party shall not make, nor permit any third party to make, any disparaging comments about the other party in the presence or the hearing of the minor child. The parties shall not involve the minor child in any of the disputes between them. Each party shall notify the other of any activity of the minor child that could be reasonable expected to be of significant concern to the other party, particularly medical and educational issues.

6. Each party shall give the other party notice if a period of visitation or communication must be modified or canceled. In the event a period of physical custody or communication must be modified or canceled, a makeup period shall be afforded to that party within a period of time thereafter.

7. The Father shall share all relevant social, medical, religious and educational information concerning the minor child with the Mother in a timely and forthright manner. The Father shall at all times keep the Mother informed as to the identity, address and phone number of any physician, dentist, therapist or medical provider of services to the minor child.

8. Each party shall provide the other party at all times with his/her current address, telephone number, including a cell phone and residence number and report any changes thereto immediately upon the change.

9. The parties, by their express agreement, may change the visitation schedule for the convenience of either parents, the minor child or when it is in the best interest of the minor child.

10. This order shall supersede any and all prior orders of custody but any relevant provisions of prior orders not mentioned herein shall remain in full force and effect.

11. The party who willfully fails to comply with this order may be adjudged in Contempt and may be punished by imprisonment, a fine, probation, counsel fees and costs.

The court recognizes the severity of this custody order but also believes that it is in the best interest of the minor child. The court also recognizes the desires of the minor child and it would be in her best interest to participate in a more conventional custody order even though her parents are living hundreds of miles apart. However, the court also recognizes the potential harm that may have been suffered by the child as well as the child's relationship with her Father because of the actions of the Mother. The court cannot emphasize too strongly the importance of the Mother recognizing her role in creating this present situation. The limited visitation rights of the Mother have clearly minimized the ongoing legal battle between the parents. If nothing else, the parents need to recognize the damage, both physical and emotional that is caused by such legal proceedings. Without question, these proceedings are potentially very damaging to ███ Child and it is hoped that some type of reconciliation between the parents will be possible in the future.

The court is very interested in what the future holds and welcomes the request of either party to schedule a review conference at the appropriate time.

BY THE COURT:

_____

FRED A. PIERANTONI,          J.

Copies:

Ruth S. Borland, Esq.
69 Public Square
Suite 1100
Wilkes-Barre, Pa. 18701

Gary A. Michak, Esq.
1846 Memorial Highway
Suite 100
Shavertown, Pa. 18708

Janet A. Conser, Esq.
575 Pierce St.
Suite 501
Kingston, Pa. 18704

30