J-S24016-19

## NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| A.P. | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| M.K. | : | |
| | : | |
| Appellant | : | No. 118 EDA 2019 |

Appeal from the Order Entered December 10, 2018
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): OC1600158

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS*, P.J.E.

MEMORANDUM BY McLAUGHLIN, J.:                    **FILED JUNE 25, 2019**

M.K. ("Mother") appeals from the order granting shared custody of A.P. ("Child") to Mother and A.P. ("Father") if Mother returned to Philadelphia by August 9, 2019, but granting primary custody to Father if Mother did not return to Philadelphia by August 9, 2019. We conclude the trial court abused its discretion, vacate the custody order, and remand to the trial court for further proceedings.

Mother and Father had a relationship while Mother lived in Philadelphia. She moved to California, but returned to Philadelphia after she learned she was pregnant. Child was born in August 2015 in Philadelphia. In February 2016, Mother filed a Complaint for Primary Physical and Legal Custody and Father filed a Complaint for Shared Physical and Legal Custody. Mother also filed a Notice of Relocation to California, to which Father objected. Starting in June 2016, the parties stipulated that Mother would have primary custody in

_____
* Former Justice specially assigned to the Superior Court.

California and Father would have supervised custody when Mother was in Philadelphia for one week in August and during the weekend of September 30 and for Halloween in California.[1]

On December 6, 2016, a final order by agreement was entered in which Mother and Father had shared legal custody, Mother and Child were permitted to relocate to California, and the parties would have shared physical custody. Father would spend two weeks each month in California with Child at Mother's residence.

Father filed a Petition for Modification in June 2017 and for contempt in September 2017. Interim orders were entered.

In June 2018, Mother filed a Petition for Contempt. In August 2018, Father filed a Petition for Modification and a Petition for Contempt. Father also filed a Notice of Relocation to Philadelphia, to which Mother objected.

The trial court held a custody hearing in October 2018, after which it stated that it would "fashion an[] order that says, effective as of a certain date, [F]ather will have primary physical custody, and that would take into consideration that [M]other would have the ability to return to Philadelphia." N.T., 10/30/18, at 459. A final order was entered in December 2018, awarding the parties shared legal and physical custody of Child and providing Father

_____

[1] The initial filings in this case are not part of the certified record. The filings, however, are listed on the docket, and the parties do not dispute the procedural history.

specified periods of custody through July 2019. Order, filed Dec. 10, 2018. It

then ordered that:

> [E]ffective August 9, 2019, if Mother has returned to live in Philadelphia, the parties will share physical custody on a weekly basis . . . . If Mother does not return to Philadelphia, effective August 9, 2019, Father will have primary physical custody of the child. Mother may have one week of partial physical custody each month beginning in September, 2019, until the child is enrolled in kindergarten.

*Id.* Mother filed a timely Notice of Appeal.

Mother raises the following issues:

> I. Did the Trial Court abuse its discretion in its decision to grant Father's Relocation Petition, which awarded Father primary physical custody of the child if Mother did not return to Pennsylvania from California, based upon an assumption that Mother would move back to the Philadelphia area, despite that the weight of the evidence under the custody and relocation factors weighed in favor of Mother maintaining primary physical custody of the child in California.
>
> II. Did the Trial Court abuse its discretion in making a determination to award Father primary physical custody of the child if Mother does not move back to Philadelphia while acknowledging that it may not have the authority to do so under the custody and relocation statutes since its decision was, in essence, a mandate that Mother must move back to Philadelphia.
>
> III. Did the Trial Court abuse its discretion and commit an error of law in considering each of the custody and relocation factors but then not basing its ultimate decision upon its findings regarding each of the custody and relocation factors as required by law.
>
> IV. Did the Trial Court abuse its discretion in determining that the weight of the evidence, based upon its feeling that the child's residence in California deprives Father of the ability to be a Father to the child as opposed to what is in the best interests of the child. In doing so, the court

disregarded the significant fact that Father consented to the child's move to California two (2) years prior to the trial in the instant matter and the court's own conclusion that severing the relationship between Mother and the child would be traumatic for the child.

V. Did the Trial Court abuse its discretion when it improperly weighed the custody and relocation factors, and essentially [threw] its findings on the factors out, in reaching its decision in the matter.

Mother's Br. at 7-8.

"When we review a custody order, we accept the factual findings of the trial court that are supported by competent evidence of record and we defer to the trial court's weighing of the evidence." **S.S. v. K.F.**, 189 A.3d 1093, 1098 (Pa.Super. 2018) (citing **D.K. v. S.P.K.**, 102 A.3d 467, 478 (Pa.Super. 2014)). "[W]e are not bound by the trial court's decision where it is 'unreasonable in light of the sustainable findings of the trial court,' and may reject the trial court's conclusions that involve an error of law or an abuse of discretion." **Id.** (quoting **D.K.**, 102 A.3d at 78). The scope of our review is plenary. **Id.**

"The Child Custody Act provides that when a custodial party seeks to relocate a child's residence, the party must petition the court, and the court must consider the relocation factors of Section 5337(h)." **Id.** (citing 23 Pa.C.S.A. § 5337(h)). Where "the proposed relocation will result in a change in custody, the court must also consider the custody factors in Section 5328(a)." **Id.** Further "[a] court should avoid 'dissociating the issue of primary custody from the issue of relocation,' and should instead decide the two issues

- 4 -

together 'under a single umbrella of best interests of the children.'" *Id.* (quoting *S.J.S. v. M.J.S.*, 76 A.3d 541, 550 (Pa.Super. 2013)).

"When a trial court orders a form of custody, the best interest of the child is paramount." *S.W.D. v. S.A.R.*, 96 A.3d 396, 400 (Pa.Super. 2014). The factors that a trial court must consider when awarding custody are set forth at 23 Pa.C.S.A. § 5328(a), which provides:

> **(a) Factors.—**In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:
>
> (1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.
>
> (2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.
>
> (2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).
>
> (3) The parental duties performed by each party on behalf of the child.
>
> (4) The need for stability and continuity in the child's education, family life and community life.
>
> (5) The availability of extended family.
>
> (6) The child's sibling relationships.
>
> (7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

The relocation factors that a court must consider are as follows:

**(h) Relocation factors.--**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h).

A court must not only make findings as to each factor, but must also base its custody decision on the factor analysis. *See M.J.M. v. M.L.G.*, 63 A.3d 331, 336 (Pa.Super. 2013) (finding that "all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations"). Therefore, if a court's findings favor one party, "it must

provide valid reasoning to support [a] decision" to award custody to the other party. **W.C.F. v. M.G.**, 115 A.3d 323, 331 (Pa.Super. 2015). Further, we have found a court has abused its discretion where it based its determination on an inference that was not supported by the record. **See Collins v. Collins**, 897 A.2d 466, 473 (Pa.Super. 2006). In **Collins**, this Court found the trial court abused its discretion when it awarded primary physical custody to Father and denied Mother's relocation petition. **Id.** This Court found that the trial court erred in multiple conclusions, including its conclusion that the father offered the more stable environment, which was based on an inference that the mother's relocation to Utah would be temporary. **Id.** at 474. The court found the inference was not supported by the record, and stated that "[t]he error was particularly egregious in light of the fact that the alleged instability in Mother's residence was the primary factor in the trial court's determination that relocation was not in the children's best interest." **Id.** at 475 (emphasis omitted).

Here, the trial court addressed the relocation factors and custody factors at the hearing. However, it often did not state whether the factor favored Mother, Father, or was neutral, and the court's conclusion as to the factor was not always clear from its discussion.

The trial court first discussed the relocation factors. It addressed the nature, quality, extent of involvement and duration of the child's relationship with the parties and others in the child's life. The trial court found it was "crystal clear" Child had a "very close relationship with [M]other, and that a

severance of that would be, I'm certain, traumatic for the child." N.T., 10/30/18, at 439. The court noted that Mother testified she and Child had friends in California, and "a community of the parent exists in California, but, then, it could also be made in another place." *Id.* at 440. The court noted that Father traveled to California to spend time with Child and "it might not be the same as if he were the primary custody parent[,] but there was an extensive involvement with [F]ather and the child" *Id.*

The court next addressed the age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development. The trial court found "[C]hild is still young enough so that the relocation, moving from one place to another, with a different set of friends, a different childcare and a different daycare would not be significant." *Id.* at 441. It also noted that Child's relationship with Mother "could not be underestimated." *Id.*

The next factor the court considered was the feasibility of preserving the relationship between the child and the nonrelocating party. The court noted that any schedule created where one party is in California and one is in Pennsylvania, cannot be a substitute for a "close relationship or close contact between the child and the parent." *Id.* at 442. It noted that Mother believed Father could have a relationship with Child with a "schedule," so that "it cannot be said that [M]other also could not have that relationship with a schedule." *Id.*

The court found Child was too young to have a preference.

The trial court next addressed whether there was a pattern of conduct to promote or thwart the child's relationship with the other party. The court noted Mother's testimony that she visited the Philadelphia area several times and that Father did not permit Child to speak with Mother on a weekend because there was "no weekend plan." *Id.* at 443-44. It stated that although Father claimed he had trouble contacting Child, Mother denied this. *Id.* at 443-44. The Court found that Mother did not act to thwart Child's relationship with Father, but that Father did keep Mother from speaking with Child on one occasion. *Id.* at 444.

The next factor addresses whether the relocation will enhance the general quality of life for the party seeking the relocation. The court found this factor was not at issue because Father was not moving. It further noted that, if Child lived in Philadelphia, "Father would not have the burden of the expense of traveling to California." *Id.* at 445.

The next factor considers whether the relocation will enhance the general quality of life for the child. The trial court noted the parties did not present evidence to permit the court to compare the childcare providers and schools in California to those in Philadelphia. It concluded "[n]body has shown that there's some type of superiority to weigh in, one way or the other." *Id.* at 445-46.

In addressing the reasons and motivation for relocating and opposing relocating, the court found Mother's initial move to California was for employment and Father's motivation in seeking to relocate Child to

Philadelphia was "to maintain a closer relationship with the child." *Id.* at 446. It found that neither party had an ulterior motive. *Id.*

The court next addressed present and past abuse committed by a party and whether there is a continued risk of harm to the child or an abused party. The trial court referenced Mother's testimony that Father grabbed Mother by the throat on one occasion and that Mother called the police after Father would not leave. *Id.* at 446. It then stated that Mother did not have a specific incident when asked whether Father had caused harm to Child, but that Mother did complain that Father did not feed Child breakfast. The court then stated, "I don't think we ever got an answer to that, about the breakfast, which is kind of still up in the air, I suppose. Okay." *Id.* at 447.

The trial court then discussed the custody factors. The court found the factor that considers which party is more likely to encourage and permit frequent contact favored Mother. It again noted that Mother came to Philadelphia and that, although Father allowed Mother to travel with Child, he refused to allow Mother to speak with Child at one point.

In addressing the parental duties performed by the parties, the court noted that Mother arranged for childcare and described her time with Child, including their mornings together, and how they spent time outside. It noted Father did not testify "as to any of the specific duties," but he did testify that he and Child were close, he loved her, and "she was essentially the center of his life." *Id.* at 448-49. He further testified that he has a two-bedroom

apartment, so Child could reside with him, and that he researched childcare providers. *Id.*

As to the factor addressing the need for stability and continuity in the child's education, family life and community life, the court found that "because [Child] is only three years old, a drastic change in residence, in the childcare and day care, would not be significant." *Id.* at 449. It did, however, find that a significant issue would be Child's relationship with Mother, as Mother spends time with Child even during Father's custody weeks. *Id.* The court found it "would be a significant disruption, and emotionally, as well, for the child." *Id.*

The court next considered the availability of extended family, finding both Mother and Father had family in the Philadelphia area, and that Mother had a cousin in California.

The court found Child did not have siblings. Therefore the factor considering sibling relationships was inapplicable. The court found there was no testimony about attempts to turn Child against the other party.

The court next considered which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs. The Court found Mother was able to maintain a loving, stable, consistent and nurturing relationship. It further found Father testified about how he spends time with Child and how he researched childcare in the Philadelphia area. *Id.* at 450-51.

In addressing which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child, the trial

court found that Mother was "very attuned" to Child, and she had the ability to care for Child and tend to her needs. *Id.* at 451. It stated, for Father, the court "would have to rely more so upon his checking out daycare, the apartments, and so on, his expression of emotional support, and how much he cared for the child." *Id.*

For the factor considering the proximity of the residences of the parties, the court simply stated "[t]hat is the problem." *Id.* The court found each party was able to make child care arrangements. *Id.*

The court next addressed the level of conflict between the parties. It noted that the parties had been cooperating with each other, and although there were "disruptions," the parties would "then come back to some more compatible arrangement." *Id.* at 452. It noted there were times when "hostility prevailed," but they had a "much higher level of civility" than in many cases. *Id.*

In addressing the factor that considers the history of drug or alcohol abuse of a party or member of a party's household, the court noted that Mother testified as to Father's marijuana use, and the court found that "[i]t does not sound to me like [F]ather has abstained totally from indulging in marijuana." *Id.* It then concluded that it "[could not] order anything right now because its after [5:00 p.m.]." *Id.*

The next factor considers the mental and physical condition of a party or member of a party's household. The court noted Mother's testimony as to Father's suicide attempt, but stated it was "not convinced that it would have

arisen to suicide," and noted that, at Mother's suggestion, Father started seeing a therapist. *Id.* at 453. It found that Father had a "much more emotional personality," and Mother was more "analytical," although "she's not without her ability . . . to demonstrate emotion." *Id.* 453-54.

The trial court then made the following conclusion:

> Mother's relocation to California actually means that – you can put it however you want about arranging for a custody schedule, but [M]other's relocation to California was, in essence, an affirmative decision on her part.
>
> And, granted, I understand what the work environment was, and why that was, but it was essentially a decision that [F]ather would not be in the Child's life.
>
> Now, this is a little peculiar, because [M]other already moved. The issue is not [M]other's relocation; the issue is [F]ather's, okay? And this may be something that might have to be resolved with the appellate court.
>
> But, notwithstanding [F]ather's negatives, the two of you are not going to be able to monetarily afford frequent trips, as has been the case with [F]ather to California.
>
> That was an arrangement that was, I'm sure, challenging for all parties, and very, very, very costly. It's not like either one of you is a movie star and – such that, you know, it's taken into – its normal that (unintelligible) you know, relocation for a couple of years, and then the other party and the kid has to schlep on the plane.
>
> And this also means that the child spends a lot of time on the plane, if and when the child starts traveling and/or the other party spends a lot of time on the plane.
>
> So, my decision is peculiar because it's kind of a reversal, and I'm not certain that it would be upheld by the court, but I am inclined to award [F]ather primary custody because I assume that [M]other will come back to the Philadelphia area.

- 14 -

Mother has more ability to come back to the Philadelphia area than [F]ather would have to relocate to California.

I am reminded of a case very early on, you know, and it's really – you know, a child, it seems to me, very young, especially when she is an infant when [M]other moved – its seems to me that a child has the right to have both parents.

So that, when [M]other moved to California – and it was not a move – and it was a move, and she gave her explanation that it was not a move, for example, that comes about, for example, had she been married and her husband relocated.

It was not a move driven out of necessity, such that there would be, you know, no other resolution but that the parties would have to be separated, because it seems to me that, with the hospitals, and in the greater Philadelphia area, I would certainly understand that [M]other prefers California.

That is her place. That is where she is. That's where her life [is]. That's where she enjoys, as opposed to Philadelphia.

But, letting [Mother] retain primary physical custody and making whatever arrangement for [F]ather, that is a reality. That is not in the kid's life.

He's not there when she's going to play soccer, because when she starts going to school, the non-custodial parent isn't there, except for holidays and summer, and then the child has to schlep back and forth on the plane, or [a] parent has to.

And, again, you know, there's nothing about the income of either party that is such that frequent traveling is something that can be abided by, by both parties.

I'm reminded of a case that I had very early on when I was on the bench. It was relocation, and both mom and dad were in Philadelphia. They were psychologists. They had a falling out. There was an allocation of abuse by dad.

He had no family here, she had no family here. She had family in Michigan. She moved to Michigan. . . .

And there was everything there for [M]other. She had extended family. She was working with the University of Michigan. . . . And one thing that stopped in my mind, that

I just couldn't get out of my mind in that case was, "This kid will not be able to learn to play tennis with dad. That [he] is not going to be able to teach this kid how to play tennis."

And that stuck in my mind so much, and I made the decision to deny the relocation. It turns out, [the] mother came back to Philadelphia, and now, every once in awhile, every year or 18 months or so, I get some additional agreement to sign off on.

And so, I think, especially when you sit – as a judge here in Family Court, what we see on a day to day basis of the problems with family – severe problems. . . .

And, so, what you have is a situation with, you know, [F]ather, whose clear love and devotion to the child is not questioned. Neither is [M]other's love and devotion to the child.

But [M]other's being in California really deprives [F]ather of the ability to be a father to . . . [C]hild. And, again, it's not such that the reasons for [M]other remaining in California is so extreme that there's no other thing that can be done.

And, so, what I will do is, in some way, fashion and order that says that, effective as of a certain date, [F]ather will have primary physical custody, and that would take into consideration that [M]other would have the ability to return to Philadelphia.

And, again, if [M]other intends to appeal, which she certainly presumably would, it would be up to the appellate court to decide if what I have given as a reason is valid under the statutes, because it is almost like a peculiar reversal – and that the arrangement – essentially then, I guess one could view it as almost like a mandate that [M]other would have to return, even though . . . we don't have the ability to order that.

But that would be the reason I would make this order, again, because . . . . keeping the child in California deprives the child of a right to have her dad there.

And there's not a serious enough reason for [M]other to remain in California, notwithstanding, again, that [M]other absolutely would totally prefer it there.

- 16 -

*Id.* at 454-59.

The trial court issued an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a) and, after "an opportunity to consider and reflect upon the testimony," provided a "more comprehensive conclusion." Trial Court Opinion, filed Jan. 24, 2019, at 23 ("1925(a) Op."). This opinion not only expanded upon the court's reasoning following the hearing, it also altered conclusions as to certain factors. For example, at the hearing, the court found that the factor considering whether either party is likely to promote or thwart a relationship with the other weighed in favor of Mother. In its Rule 1925(a) opinion, however, the court seemed to find that it weighs in favor of Father, stating:

> Mother's relocation to California evidenced that she had not given appropriate consideration to the child's relationship with Father since she moved when the child was only four or five months old shortly after an argument between her and Father. She envisioned that Father would have contact with the child during the summer. On the other hand, Father agreed to allow Mother to relocate with the child to California, then had to file a Complaint for Custody to have a schedule for seeing the child. He also did not oppose a trip Mother took with the child to Liberia, while Mother objected to a trip Father wanted to take with the child to Columbia.
>
> Mother testified she brought the child to Philadelphia on several occasions to spend time with family members and with Father and his friends, although it was not clarified how much time the child spent with Father during those trips. Moreover, the trips occurred only when the parties were getting along. It also must be noted that Mother's Petition for Modification seeks to eliminate Father's current custody schedule of two weeks per month to five weeks during the summer and holidays. N.T. at 327-328.

> Mother also testified that she had problems communicating with the child when she was in Philadelphia and that she purchased an iPad for the child for that purpose. However, the only written corroboration of Father's denial of access was on June 23, 2018, when, according to the schedule in the order, Father would have been in California with the child on that day. His response was, "We haven't scheduled weekend calls. You'll have to find some time for me to talk to her during the weekend, as well." N.T. at 281-288.

1925(a) Op. at 12-13.

The trial court abused its discretion by not clearly discussing the factors, and by basing its custody and relocation determination on something other than its factor analysis. *Cf. M.J.M.*, 63 A.3d at 336-37. The court often did not state, and we are unable to determine from its discussion, whether a factor favored Mother, favored Father, or was neutral. Further, the court's decision to grant Father primary custody did not appear to be based on the factors, but rather on the court's assumption that Mother would return to Philadelphia.

Adding further confusion to the case, in its Rule 1925(a) opinion, the trial court offers a different factor analysis, sometimes seeming to alter its original conclusions as to the factors. We have held that "[S]ection 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen factors prior to the deadline by which a litigant must file a notice of appeal." *C.B. v. J.B.*, 65 A.3d 946, 955 (Pa.Super. 2013). This assessment eliminates the risk that "a party will fund and pursue an unnecessary appeal or, worse, suffer waiver of any issues on appeal" and prevents a parent from being required "to speculate as he or she attempts to preserve his or her appellate rights." *Id.* at 954. This requirement is particularly needed where, rather than

clarifying any analysis, the court alters its conclusions as to the factors in its Rule 1925(a) opinion, as the court did here.

We therefore vacate the custody order and remand for a new custody factor analysis. The parties' and Child's situation may have changed since the October 2018 hearing, and the trial court may require additional testimony to reach its conclusions. We therefore will leave the decision as to whether a new hearing is required to the trial court.

In finding remand is necessary, we do not find that the trial court cannot grant Father's relocation petition and grant him primary physical custody. We conclude only that the trial court abused its discretion by not providing a clear analysis under the custody and relocation factors and by seeming to base its custody determination on an assumption that Mother would move.

Order vacated. Case remanded. Jurisdiction relinquished.

Judgment Entered.

_____
Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/19

- 19 -